## Appeal of James W. Convers in the matter of the petition of the Grand Rapids and Ind. R. R. Co.

*Petition for appraisal under General R. R. Law : Map and Survey.* Section 19 of the General R. R. Law, as amended, *L. 1859, p. 559, 560,* requires the petition for an appraisal of lands to declare among other things that the company has "surveyed the route of its proposed road, in said county, and made a *map and survey thereof,* by which said route is designated, and that they have located their said road according to such survey and filed a certificate thereof, &c.

The "map and survey" required by the statute must be something more than a general outline map giving an approximate idea of the situation of the road, without *the means of fixing each point and course.* The map must embody or be accompanied by such full and accurate notes and data as will furnish complete means for identifying the precise position of every part of the line, with courses and distances throughout, so that there can be no doubt as to where any portion of it is to be found

*Jury in special proceedings : Presence of Court.* The statute—*Laws of 1864, p. 14*—providing in such cases for an order by the court for a drawing of a jury and the issuing of the venire, contemplates that such drawing, &c., shall be made in the presence of the court at the time of making the order, and a jury drawn subsequently to the order and not in the presence of the court is illega'.

*Jury : Vicinage : County.* When the names of jurors are required to be drawn from the box, the "vicinage" from which they are to be summoned, means the county, and not the town or neighborhood in which the land to be taken lies.

CONVERS v. GRAND RAPIDS & IND. R. R. CO.

*Jury in other than criminal cases: Peremptory challenge.* Challenges for cause may be made to jurors summoned under the railroad law, to assess damages, but peremptory challenges are not allowed in such proceedings. No peremptory challenge lies in any but criminal proceedings, except where given by statute, and in these special proceedings no provision has been made for them.

*Jury—Special cases: Peremptory challenges.* The statute—*2 Comp. Laws,* § 4400— allowing two peremptory challenges in "civil cases" does not apply to special proceedings not in the ordinary course of law.

*Heard and decided May 12th.*

Appeal from Kent Circuit.

This is an appeal by James W. Converse, from proceedings on the part of the Grand Rapids and Indiana R. R. Co. to condemn certain lands of his for the use of said road.

The material facts are stated in the opinion.

*George Gray,* for complainant.

1. The drawing of the jury was by the clerk, in the usual form, in presence of a justice of the peace and the sheriff. It is not required to be in presence of the court.— *1 Comp. Laws, 641.*

2. It is objecfed that the jury were not all from the city of Grand Rapids or towns in the neighborhood. But the jury must be drawn from the jury-box; and the vicinity is equivalent to the vicinage or county.

3. The conditions precedent to the exercise of the right of eminent domain by a railroad company, are those prescribed by the statute in such case made and provided, and no other.

The only question made under this head by the appellant is, that the line was not lawfully located through the city of Grand Rapids, inasmuch as the consent of the common council was not given, and if given, was not lawful, in so far as it purported to give the right to locate the line on certain streets of the city.

The line was located, and the map filed. The consent of the common council was given, by ordinance of October 15, 1867, page 52.—*Gen. R. R. Law,* § 29, *p. 646.*

But we contend that this is a question, not between the appellant and the railroad company in this proceeding, and is not a condition precedent to the exercise of the right of eminent domain.

The conditions are prescribed in § *19, p. 638, 1 Comp. Laws;* no others are imposed or in issue. These conditions are complied with, and no proofs are introduced contrary.

The map filed shows streets, town lines, section lines, corners, &c. and was furnished with a scale, from which the whole can be determined.—*See* § *19, Supra.*

*G. V. N. Lothrop,* for defendant and appellant.

1. All conditions precedent to the exercise of the right of eminent domain by a railroad company must be complied with.

The company must comply with all the conditions of its charter, or of the laws requisite to enable it to go forward in the construction of its road before it can condemn lands.—*1 Redf. on Railroads, p. 234-5-6, 239; Atkinson v. Mar. & Cin. R. R. Co. 15 Ohio, St. 21; Gillinwater v. Miss. & A. R. Co. 13 Ill. 1.*

The lawful location of its line in Kent county was a condition precedent to this attempt by the company to seize on lands.—*1 Comp. Laws, 1963.*

2. The railroad company can locate its line through any city without leave of the common council.—*1 Comp, Laws, p. 643, 1973.*

3. No railroad company had any lawfully located route through the city of Grand Rapids at the time the petition was filed.

*a.* The map was the only paper filed. No minutes of survey at all accompanied the map. This was necessary for by this alone, could the line on the map be run and determined.—*1 Comp. Laws, 1960, 1963.*

*b.* The city council of Grand Rapids had never consented to the location of the line through the city. No part of the location was ever before them, except so much as was upon certain streets. And though the assent to locate through Almy, Ferry and Blossom streets was given by the ordinance of October 15th, yet this was repealed by the ordinance of October 29th.

*c.* The common council had no authority to grant the use of a public street to the use of a steam railroad company; and hence no line could be lawfully located, which included such a street.

It seems to be now fully settled, that where the fee of a public street is in the adjacent proprietor, neither the legislature, nor the local authority, nor both together, can authorize a steam railroad to be laid on such street, without first providing for compensation to such proprietor.—*Cooley, Const. Law, 547 et. seq ; Trustees v. A. & R. R. R. Co. 3 Hill, 567'; Williams v. N. Y. C. R. R. Co. 16 N. Y. 97; Carpenter v. O. & S. R. R. Co. 24 1d. 655; Mahon v. N. Y. C. R. R. Co. 24 Id ; Wagner v. Troy Union R. R. Co. 25 Id. 531; Springfield v. Conn. Riv. Co. 4 Cush. 63 ; Troy v. Chest. R. R. Co. 23 N. H. 83; Nicholson v. N. Y. & N. H. R. R. Co. 22 · Conn. 74; Imlay v. Union Br. R. R. 26 Id. 249; City of Janesville v. Mil. & Mis. R. R. 7 Wis. 489; Ford v. Chi. & N. W. R. R. Co. 14 Id. 609; Pomeroy v. Chi. & Mil. R. R. Co. 16 Id. 640; Tate v. Ohio & Mis. R. R. Co. 7 Ind. 479; Scharmier v. St. P. R. R. Co. 10 Minn. 82 ; See Muffin v. R. R. Co. 16 Penn. St. 180.*

In New York it is held that where the fee of a street is vested in the people, or in the municipality, it is lawful for the legislature to devote the street to the uses of a steam railroad.—*People v. Kerr, 27 N. Y. 188, 200, 213.*

Still, it is conceded, even in such case, that the

public hold the fee of the street, not as private property, but only in trust for public uses; and, perhaps, only for uses pertaining to public ways.—*People v. N. Y. & H. R. R. Co. 45 Barb. 83; People v. Kerr, 27 N. Y. 197-8-9, 212; Milbau v. Sharp, 27 Id. 611.*

In other states it is held that, even where the fee of a street is in the public, still the adjacent owner has a private right that the street shall be kept open, with unobstructed access to his lot, and that this right is properly within the constitutional protection.—*Tate v. O. & Miss. R. R. Co. 7 Ind. 479; Haynes v. Thompson, 7 Id. 38; Prutzman v. Ind. & C. R. R. Co. 9 Id. 467; New Albany & S. R. R. Co. v. O'Dale, 13 Id. 354; Cincinnati v. Cumminsville, 14 Ohio St. 523; Scharmier v. St. P. & P. R. R. Co. 10 Minn. 83.*

Such seems to be held in England.—*Thompson v. W. Sou. R. R. Co. 29 Law Times,* cited in note to *Redf. p. 310;* See also remarks of *Balcon and Marvin, J. J.* at end of *People v. Kerr, 27 N. Y. 188.*

And all the cases agree that no street or highway can be appropriated to the uses of a steam railroad, except under authority from the legislature; and hence, that a mere municipal license is void.—*Davis v. Mayor, 14 N. Y. 514; Milbau v. Sharp, 27 Id. 611; Com. v. N. E. R. R. 27 Penn. 354; Lackland v. N. Mis. R. R. Co. 31 Mis. 180; Milbau v. Sharp, 14 Barb. 435; People v. N. Y. & N. H. R. R. Co. 45, Id. 83.*

If built on a street without such authority from the sovereign legislature, it is a public nuisance.—*People v. Kerr, 27 N. Y. 188; Davis v. Mayor, 14, Id. 514.*

And not only is it in such case a public nuisance, but if it works any special private injury to an adjacent proprietor, he may maintain his private suit, either for prevention or redress.—*2 Redf.* § *205, p. 308; Corning v. Lawrence, 6 Johns. Ch. 439; Ketchum v. Buffalo, 14 N. Y. 356; Davis v. Mayor, 14 Id. 514; Doolittle v. Supervisors, 18 Id.*

160; People v. Kerr, 27 Id. 188; Milbau v. Sharp, 27 Id. 611; Penn. v. Wheeling Bridge, 13 How. 564.

Such authority must be clear. It is not to be presumed.—State v. Warren R. R. 29 N. J. 353.

4. The foregoing cases fully establish that the railway company that assumes to use a street, must be able to show full authority from the sovereign legislature.

The legislature has, in no case, authorized a railroad company to appropriate a public street for its road-way.

The general railroad law does, indeed, authorize the crossing of streets.—1 Comp. Laws, 1972, Subdiv. 5 of 1961.

But this gives no color to the claim to appropriate a highway for the line of road.—State v. Warren, 29 N. J. 353

Nor can any such power be derived from the power given the common council to determine the route and grade.

This gives the city no power to devote any land for that purpose. It may fix any lawful line; and no line can be lawful, the right to use which cannot in some way be lawfully acquired. After the line is fixed, the power to take and occupy the situs must be sought elewhere.

The very terms of the act show that it is only land held by the ordinary tenure as private property that can be acquired by a railroad company for its uses.—1 Comp. L. 1961, 1962, 1963.

No property held for public uses can, by the railroad law, be either bought or condemned.

Nor does the broad power · conferred on municipal corporations, to regulate and control public streets, give any power to authorize them to be appropriated to any but common public uses.—Davis v. Mayor, 14 N. Y. 517; People v. Kerr, 27 Id. 198-9; Lackland v. N. Mo. R. R. Co. 31 Mis. 180; `People v. N. Y. & N. H. R. R. Co. 45 Barb. 83.

And, without express legislative authority, municipalities can make no ordinance, nor do any act, which re-

strains or surrenders such control.—*E. Hartford v. E. Hartf. Bridge Co. 10 How. 534; Milbau v. Sharp, 27 N. Y. 621-2.*

On this point I say, finally, that not only is there no authority in terms from the legislature to take streets for railway tracks, but the claim is in conflict with the express provisions of the act. See the provisions for fencing.—*1 Comp. Laws, 1987.*

This contemplates what is now recognized by all courts, that the use of a track for a steam railway is, from its very nature, an exclusive use.

This company therefore had made no lawful location of their route through the city of Grand Rapids, and they were not entitled to an order for commissioners.

4. The jurors were drawn, not in presence of the court, or of the judge holding the court. They were drawn out of court, by persons not authorized by statute, and therefore the act was wholly unofficial.—*Laws 1864, p. 13.*

5. The jurors were not from the vicinity, as required by the constitution.—*Art. 18, Sec. 2.*

Not one drawn was from the city of Grand Rapids. Only two or three were even from adjacent towns. Most of them were from remote towns in the county.

CAMPBELL J.

The appellant is owner of certain lands in and near Grand Rapids, and appeals from proceedings to condemn certain portions of them for the use of the Grand Rapids and Indiana Railroad. Several objections are made to the regularity of the proceedings, which will be noticed, so far as may be necessary.

The first and preliminary objection rests on the alleged failure of the petitioners to file in the county registry, the map and survey required by law to be left there before any proceedings can be had to take lands.

Section 19 of the general railroad law, as amended in 1859, (*L. 1859, p. 559, 560,*) requires the petition for an appraisal to declare among other things, "that the company have surveyed the route of its proposed road in said county, and made a map and survey thereof, by which said route is designated, and that they have located their said road according to such survey, and filed a certificate thereof, signed by a majority of the directors of said company in the register's office of said county."

The case shows that a map was filed in the register's office, which is claimed to show the location of the road, but no other paper, survey or certificate was left in that office. It is claimed, however, that the map is sufficient, and that the term "survey" does not apply to anything but the work on the ground, of which the map is assumed to be the only record contemplated by the statute.

We understand by the term "map and survey," not only a delineation upon paper or other material, giving a general, or approximate idea of the situation of the road, but also such full and accurate notes and data as are necessary to furnish complete means for identifying and ascertaining the precise position of every part of the line with courses and distances throughout, so that there can be no doubt as to where any portion of it is to be found. A map can be made to contain all of these data, so as to need no reference to field notes, but the information must exist somewhere. The map before us is singularly deficient. It purports to be drawn by a scale; but the lines of the road are not so laid down as to enable any one by the use of instruments to ascertain its location with any degree of accuracy. There is nothing to show its distance from corners, or other boundaries at any part of the line. There are no courses or distances given either on straight lines or on curves—and the lines

are very irregular, and by no means parallel throughout—and a map drawn on such a scale could not be made accurately enough, by most draughtmen, to dispense with the aid of figures to denote place and distance.

We think that something more was needed under the statute.

It is also claimed, that the jurors were not drawn in the presence of the court as they should, as is alleged, have been drawn under the statute.

It appears that on January 23, 1868, the Circuit Court of Kent county ordered: "That there be drawn from the petit jury box of this county, a jury of twelve freeholders, &c. and that the clerk of this court issue a *venire* in the usual form, inserting therein the names so drawn, and requiring such jury to meet at the hour of 2 o'clock in the afternoon of the seventh day of February next," &c. On the 30th of January, the clerk in his office, and in presence of the sheriff, and of a justice of the peace, drew twelve names, and issued the *venire*.

Under the original provisions of section 20, of the statute, the clerk was directed to draw the names, but as it was to be done, "thereupon," that is to say, upon the making of the order, it may be doubted whether it was not to be done at once, in presence of the court or judge. But by the law of 1864, p. 14, the language is changed, and it is provided that "thereupon, said court or judge shall make an order for the drawing of such jury from the petit jury box of the county, and the said court or judge shall cause to be drawn twelve names from such box accordingly, and shall issue a *venire* in the usual form," &c. The statute contemplates that these things shall be done in the presence of the court, and at the time of making the order, so that everything may be consecutive, and may be done under judicial supervision. The counsel for the railroad had overlooked the amendment of 1864, which made clear

what may perhaps have been more doubtful before. The jury was not legally drawn.

The objection that the jurors were not of the vicinage but from distant towns is not tenable. When jurors are drawn from the jury box, the vicinage means the county· No less range would make the drawing conform to other proceedings.

A peremptory challenge was allowed against a juror summoned as one of the talesmen, and he was set aside. This was erroneous. The only provision under our law allowing peremptory challenges in matters not criminal is found in the chapter of the compiled laws relating to the "Trial of Issues of Fact," and allows a challenge of two jurors in "civil cases" as well as in prosecutions. This does not apply to special proceedings not in the ordinary course of law, and which are regulated entirely by particular statute. Challenges for cause are necessary in all inquiries by jury, but peremptory challenges in other than criminal proceedings are confined to cases where the statutes have directly provided for them. In the recent case of *Livermore vs. Hamilton*, in the New York Court of Appeals (reported in New York Times of May 10) it was held, affirming the decision of the Supreme Court, that it was error to allow a peremptory challenge in proceedings under the Landlord and Tenant law, as such proceedings were not properly civil actions. These appraisals bear no resemblance to ordinary legal trials.

These points are all that we deem it necessary to decide in view of the position of the proceedings.

As the objections to the proceedings go to the original jurisdiction, and show that there was no right to make the application at all, our order must be simply to set aside the entire proceedings, so far as they affect the appellant, with costs. The statute provides for new

proceedings where the title attempted to be acquired by the first appraisal is found defective.—(§ *1,970 C. L.*)

The other Justices concurred.