AND IN THE

## SUPERIOR COURT, COURT OF OYER AND TERMINER AND COURT OF GENERAL SESSIONS

OF

## DELAWARE,

### BEGINNING FEBRUARY, 1914.

---

SAMUEL G. ELBERT, defendant below, plaintiff in error, vs. HAR-
LAN G. SCOTT, DANIEL CORBIT, JAMES I. FORD, JOHN J.
RASKOB and L. SCOTT TOWNSEND, constituting THE NEW
CASTLE COUNTY BUILDING COMMISSION, plaintiffs below,
defendants in error.

SAMUEL G. ELBERT, plaintiff below, plaintiff in error, vs. HAR-
LAN G. SCOTT, DANIEL CORBIT, JAMES I. FORD, JOHN J.
RASKOB and L. SCOTT TOWNSEND, constituting THE NEW
CASTLE COUNTY BUILDING COMMISSION, defendants below,
defendants in error.

1. APPEAL AND ERROR—DECISIONS REVIEWABLE.

The right to a review in an appellate tribunal exists only when and to the
extent provided by the laws of the state.

2. EMINENT DOMAIN—PROCEEDINGS—"WRIT OF AD QUOD DAMNUM."

The "writ of ad quod damnum" is a common-law writ, in the nature of
an original writ, issued by the prothonotary, and in condemnation proceed-
ings is returnable to and subject to confirmation of the Superior Court, which
order of confirmation is a final order.

3. EMINENT DOMAIN—DECISIONS REVIEWABLE.

The action of the Superior Court in confirming the report of the sheriff's
jury summoned under a writ of ad quod damnum provided for by Act Febru-
ary 26, 1913 (27 Del. Laws, c. 201), authorizing the condemnation of real
estate and the issuance of writs of ad quod damnum to assess the damages,
and declaring that the report of the sheriff's jury, when confirmed, shall be

final, is a judicial decision, or at least a final order, reviewable under *Const. art.* 4, § 12, declaring that the Supreme Court has jurisdiction to finally determine all matters in error in the judgments and proceedings of the Superior Court.

4. EMINENT DOMAIN—MODE OF REVIEW—CERTIORARI.

Certiorari, and not error, is the proper proceeding by which to obtain a review of the confirmation of a report of the sheriff's jury summoned under a writ of *ad quod damnum* in a condemnation suit, for writs of error are limited to proceedings according to the common law, and a proceeding to condemn land, even by writ of *ad quod damnum*, is not one according to the common law.

5. CERTIORARI—NATURE OF WRIT.

Certiorari was originally a writ of grace, which was not granted if substantial justice had been done, despite technical errors, and for that reason was preferred to review special proceedings by inferior tribunals.

6. EMINENT DOMAIN—QUESTIONS PRESENTED BY RECORD—IMPROPER PROCEEDING.

Though certiorari is the proper procedure to obtain review of the confirmation of the report of a sheriff's jury, summoned in a condemnation suit under a writ of *ad quod damnum*, yet where the record and the parties are before the Supreme Court on writ of error, the irregularity will be overlooked and the confirmation reviewed.

7. EMINENT DOMAIN—PROCEEDINGS—DISCONTINUANCE.

A landowner dissatisfied with the damages awarded by the freeholders upon condemnation of his property, having sued out a writ of *ad quod damnum*, cannot discontinue proceedings after verdict has been taken and a return made by the sheriff.

8. EMINENT DOMAIN—PROCEEDINGS—WRIT OF AD QUOD DAMNUM.

A writ of *ad quod damnum*, issued to assess the damages of a landowner which in accord with his application did not require the sheriff's jury to take into consideration all circumstances of detriment and benefit, will not be quashed, although Act February 26, 1913 (27 *Del. Laws, c.* 201), authorizing the condemnation, required the freeholders to take into consideration such damages.

9. EMINENT DOMAIN—WRIT OF AD QUOD DAMNUM—IRREGULARITY.

Where a writ of *ad quod damnum*, issued upon the application of the New Castle County Building Commission, under Act February 26, 1913 (27 *Del. Laws, c.* 201), did not require the sheriff's jury to consider, in assessing damages from the condemnation, all circumstances of benefit and detriment, though the application so requested, a landowner, who sued out his own writ of *ad quod damnum* upon an application containing no such request, is not entitled to have quashed the writ issued to the commission.

10. EMINENT DOMAIN—PROCEEDINGS—SHERIFF'S JURY—CHALLENGE.

Where a party not present when the sheriff's jury was sworn in a condemnation proceeding participated in the trial without objection to the jury, he cannot, after award, defeat the verdict and invalidate the return by showing that he had no opportunity to challenge, because not notified of the place when and where the jury would be impaneled; it being his duty to make his objection at the first opportunity in the progress of the cause.

11. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—SHERIFF'S JURY—CHALLENGE.

The proceeding for assessment by sheriff's jury of damages caused by the condemnation of land is not a civil suit in which peremptory challenges are allowed, for, the sheriff being commanded by the writ of *ad quod damnum* to summon only twelve impartial men, *Rev. Code* 1852, amended to 1893, *p.* 807 (17 *Del. Laws, c.* 221) § 19, providing for peremptory challenges in civil cases, does not apply, though a challenge for cause made at the earliest possible opportunity would probably be allowed.

12. EMINENT DOMAIN—REVIEW—QUESTIONS PRESENTED.

Where the record on appeal failed to show the form of oaths taken by the sheriff's jury, summoned under writs of *ad quod damnum* to determine the damages upon the taking of land, the landowner cannot in the appellate court raise the question that the sheriff's return was improperly confirmed because the proper oath was not administered.

13. EMINENT DOMAIN—PROCEEDINGS—OATH OF SHERIFF'S JURY.

Where the writ of *ad quod damnum*, issued in accordance with the application of a landowner, did not require the sheriff's jury to take into consideration all circumstances of benefit and detriment, the jury need not be sworn to consider those circumstances.

14. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—VERDICT—SETTING ASIDE.

The sheriff's return of the verdict rendered by the jury in a condemnation proceeding will not be vacated, because failing to show that the jury were sworn to perform the specific duty imposed by the condemnation statute (Act February 26, 1913 [27 *Del. Laws, c.* 201]); the statute requiring no particular form of oath, and the return showing that the jurors were sworn according to law.

15. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—VERDICT OF SHERIFF'S JURY.

Where the writ of *ad quod damnum*, issued in accordance with the application of the landowner, did not require the sheriff's jury to consider all circumstances of benefit and detriment in assessing the damages, the sheriff's return on the verdict will not be vacated, because not showing that the jury considered such matters.

16. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—SHERIFF'S RETURN.

Where the writ of *ad quod damnum*, issued in accordance with the application of the landowner, did not require the sheriff's jury to consider all circumstances of benefit or detriment, the sheriff's return on the verdict will not be vacated, because not showing that the jury considered such damages, even though the application by the condemning body for such a writ required a consideration of such elements and the return to it did not show that the jury considered the detriment.

17. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—CONSIDERATION BY JURY OF NOTES OF TESTIMONY.

That the sheriff's jury in condemnation proceedings considered, after the close of the case, notes of testimony taken by a stenographer, is no ground for vacating the sheriff's return, where the stenographer was engaged at the request of the jury after it became apparent that they could not remember or conveniently take notes of the testimony.

18. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—CUSTODY OF SHERIFF'S JURY.

That the sheriff's jury, summoned to assess the damages in a condemnation proceeding, were allowed to separate after argument and before verdict, is no ground for vacating the sheriff's return.

19. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—WHAT CONSTITUTES.

Where Act February 26, 1913 (27 *Del. Laws, c.* 201), authorizing condemnations, gave landowners a reasonable opportunity upon due notice to be heard before a jury, whose findings were returnable to and subject to confirmation by a competent court of record, a landowner was not denied due process of law, because not given an opportunity to challenge the jurors before they were sworn, and because they separated after argument and before verdict.

20. EMINENT DOMAIN—PROCEEDINGS.

Proceedings for the condemnation of private property for public use should be in strict accord with the statute, and the record should show that all statutory requirements have been observed.

*(February* 17, 1914.)

CURTIS, CHANCELLOR, and BOYCE, CONRAD and RICE, J. J., sitting.

*Robert H. Richards* for plaintiff in error.

*William S. Hilles* for defendants in error.

Supreme Court, January Term, 1914.

ERROR to Superior Court, New Castle County (Nos. 4 and 5, January Term, 1914 being Nos. 32 and 33, September Term, 1913, court below).

Writs of *ad quod damnum* to assess damages from the condemnation of the property of Samuel G. Elbert were issued on the application of Harlan G. Scott and others, constituting the New Castle County Building Commission, and on the application of said Samuel G. Elbert. Motions to quash the writs and vacate and set aside the sheriff's returns thereon having been denied (4 *Boyce* 388, 88 *Atl.* 608), the landowner, Samuel G. Elbert, brings error. Affirmed.

## STATEMENT OF THE CASE.

Under the provisions of an act of the Legislature approved February 26, 1913, being *Chapter* 201, *Volume* 27, *Laws of Delaware,* "the New Castle County Building Commission," the defend-

ants in error, was created for the purpose of acquiring, by purchase or otherwise, such real estate in the City of Wilmington as may be necessary for the erection of a county building. *Section 4* of the act provides, as follows:

"Section 4.    In case the said the New Castle County Building Commission shall for any cause be unable to agree with the owner or owners for the purchase of any lot or lots of land selected by the said Commission as aforesaid for the purpose aforesaid, any judge of the Superior Court, upon application of the said Commission, shall issue a commission under his hand directed to five impartial freeholders of said county commanding them to view the premises and assess the damages which the said owner or owners will sustain by reason of taking of the said land for the purposes of this act, taking into consideration all the circumstances of benefit and detriment to result to such owner or owners, and to make return in writing of their proceedings to said judge at a time in said commission appointed.    *    *    *    Upon application of the said the New Castle County Building Commission or any owner or owners of such land to the prothonotary of the Superior Court for New Castle County, he may issue out a writ of *ad quod damnum*, requiring the sheriff in the usual form to inquire of twelve impartial men of his bailiwick of the damages as aforesaid and their report shall be final.    *    *    *    And upon confirmation of the said return or the return of the said writ of *ad quod damnum* and the payment or deposit of said damages as aforesaid, the said the New Castle County Building Commission shall cause to be recorded in the recorder's office at New Castle County the application, commission and return under which said land may be condemned as aforesaid, together with the receipts and certificates for the payment of said damages."

Among the properties sought by the Building Commission was a lot at the southeast corner of Eleventh and King Streets, extending along Eleventh Street to French Street, being all of the property of Samuel G. Elbert, the plaintiff in error in each of these cases.    Being dissatisfied with the damages awarded and assessed by the freeholders appointed by one of the judges of the Superior Court, the Building Commission, as well as Elbert, the

owner, applied to the prothonotary of New Castle County for writs of *ad quod damnum*. The application of the commission asked for a jury to assess "the damages which the said Samuel G. Elbert will sustain by reason of the taking of the said land for the purposes of the said act, taking into consideration all the circumstances of benefit and detriment to result to such owner." The application of the landowner, Elbert, was for a jury to assess "the damages occasioned to your petitioner by the taking of the said land for the purpose aforesaid." Both applications for the writs of *ad quod damnum* were made on the same day and the writs were issued to the sheriff simultaneously. The same persons were selected as jurors in each case, and at their request, and for their convenience in determining the amount of damages, stenographic notes were taken of the testimony of witnesses produced by the Building Commission and the landowner, Elbert. The returns of the sheriff of his proceedings under the writs were made to the Superior Court at the September Term, A. D. 1913. The inquisition of the jury was under seal, dated the thirtieth day of July, A. D. 1913, and in addition to a description of the property, contained in each case the following:

"We, the undersigned jurors, duly summoned under the annexed writ, having all been severally sworn or affirmed according to law and having gone upon the lands and premises in question, as described in said writ, do award to Samuel G. Elbert, the owner of the lands and premises proposed to be taken, appropriated and used by the New Castle County Building Commission, acting on behalf of New Castle County, for the purpose of the erection of a county building the sum of thirty-nine thousand ($39,000) dollars. * * * "

On the first day of the September Term, 1913, of the Superior Court, Robert H. Richards, Esq., as attorney for the landowner, filed a motion to quash the writ of *ad quod damnum* issued in each case, and also filed twenty-two exceptions to the sheriff's return in each case. In the proceedings instituted by the landowner (No. 5), leave was also asked to abandon, discontinue and stay the writ issued on application of the landowner. The exceptions filed were the basis of a motion to vacate and set aside the writs,

and after the abandonment of some of the exceptions the others were consolidated into six, which are sufficiently stated in the opinion of the court. These motions were heard together by the court below, at which time testimony of witnesses was heard, and thereafter the motions were denied and the sheriff's return confirmed. See 4 *Boyce* 388, also 88 *Atl.* 608.

With the exception of the first assignment of error in case No. 5, the assignments of error in each case are identical. The first assignment of error in case No. 5 is, as follows:

"1. That the court below erred in denying the motion of the said plaintiff in error for leave to abandon, discontinue and stay the writ of *ad quod damnum*, numbered 33 to the September term, 1913, of said court; whereas the said plaintiff in error insists that the said motion should have been granted and the judgment of the said court below thereon should have been in favor of the said plaintiff in error."

The other assignments of error are as follows:

"2. That the court below erred in denying the motion of the said plaintiff in error to quash the said writ of *ad quod damnum;* whereas the said plaintiff in error insists that the said motion should have been granted and the judgment of the said court below thereon should have been in favor of the said plaintiff in error.

"3. That the court below erred in denying the motion of the said plaintiff in error to vacate and set aside the return to said writ of *ad quod damnum;* whereas the said plaintiff in error insists that the said motion should have been granted and the judgment of the said court below thereon should have been in favor of the said plaintiff in error.

"4. That the court below erred in entering judgment confirming the return to said writ; whereas the said plaintiff in error insists that the judgment of said court should have been a judgment refusing confirmation of said return."

Both cases were heard together in this court.

CURTIS, Chancellor, delivering the opinion of the court:

[1-3] A preliminary question arises on the motion of the

defendants in error made in this court in each case to dismiss the writs of error, because the proceeding taken in each case is not according to the course of the common law and that certiorari is the proper remedy. The right to a review in an appellate tribunal exists only when and to the extent provided in the Constitution and laws of this state. By *Article* 4, § 12, of the *Constitution*, the Supreme Court has jurisdiction "to issue writs of error to the Superior Court and to finally determine all matters in error in the judgments and proceedings of said Superior Court." There is no question but that the proceeding is reviewable in this court. Though the act provides that the report of the jury shall be final, and provides no appeal, or other method of review of the action of the Superior Court in confirming the report, still there is in the Superior Court a judicial decision, or, at least, a final order in a proceeding, jurisdiction of which is rightly conferred on that court. The order of confirmation is a final order. 2 *Lewis on Eminent Domain*, § 803. The writ of *ad quod damnum* is a common-law writ, and is in the nature of an original writ. 2 *Woolley on Delaware Practice*, § 1449. It is issued by the prothonotary on application made in proper form, and under the statute controlling this case is returnable to and made subject to confirmation by the Superior Court. The necessity of confirmation by the court is not an unusual feature of acts of the Legislature conferring power to condemn land for public purposes. The confirmation is a judicial decision and implies judicial action. The Court of Errors and Appeals, in the case of *Whiteman v. Wilmington and Susquehanna R. R. Co.*, 2 *Harr.* 514, 524, 33 *Am. Dec.* 411, referred to a proceeding to assess damages for land taken for the railroad by means of a writ of *ad quod damnum* as providing to the landowner "both a jury trial and judicial action", though in that case the act did not require a confirmation by the Superior Court of the report or inquisition of the sheriff's jury. See 9 *Del. Laws, p.* 10, *c.* 9. On the other hand, Chancellor Saulsbury, in *Wilson v. Baltimore & Phila. R. R. Co.*, 5 *Del. Ch.* 524, 535, 542, said that the proceeding before him to condemn land for the railroad was not a judicial proceeding. But the act which he was considering did not require that the commission appointed by the judge of a

court should make any return either to him, or to a court, but to the parties, and, of course, there was no confirmation by the court and no judicial determination of any matter.

Confirmation of the return presupposes a right of a party to except to it, and a determination by the court of the questions raised by the exceptions. The exceptions may relate to matters without as well as within the record, showing irregularity or injurious error in executing the writ.

It follows, then, that if there be any error in this proceeding, in its final stage, it is reviewable by the Supreme Court. It is also obvious that this right to a review exists, though the act made the report or inquisition final, for the constitutional right to review the error in any judgment or proceeding in the Supreme Court after the cause has reached its final stage, cannot be taken away by the statute.

[4] So much is clearly true. But is the writ of error the proper proceeding with which to obtain a review? The three cases in the highest court in this state, bearing on the question, vary in their conclusions respecting the same constitutional provision. In *Jeans v. Jeans*, 3 *Harr*. 136, the court held that a writ of error would not lie to a decree of the Superior Court granting a divorce, under a statute which provided a procedure to get in the parties, give them a hearing and adjudicate their rights. The court said:

"It is true that a writ of error lies only where the proceedings are according to the course of the common law, and for this reason, that where the proceedings are summary and the matter of the jurisdiction compounded of law and fact is referred to the discretion of the particular tribunal, the court of error is not authorized to render the proper judgment."

It is not easy to understand why the court should have considered that that proceeding was summary, or involved the exercise of discretion by the court, in any greater degree than the decision of a common-law cause of action, unless it be explained by the absence of a jury trial. But there the court distinctly held that writs of error are limited to proceedings according to the common law. A proceeding to condemn land, even by a writ of

*ad quod damnum*, is not a proceeding according to the common law. It is summary. The procedure is statutory and special, and varies in different statutes. The authorities seem to hold quite generally that a writ of error will not lie (2 *Lewis on Eminent Domain*, §§ 542, 554; *Sweeney v. Chicago Telephone Co.*, 212 *Ill.* 475, 476, 72 *N. E.* 677 [1904]); and that certiorari is the proper method to obtain a review of such proceedings. In *Murphy v. City of Wilmington*, 6 *Houst.* 108, 138, 22 *Am. St. Rep.* 345, the Court of Errors and Appeals referred to a writ of certiorari as the proper proceeding to review the regularity of proceedings taken by a municipal corporation in assessing the cost of building a sewer. The cases of *Union Church v. Sanders*, 1 *Houst.* 100, 63 *Am. Dec.* 187 (1855), and *Brumley v. Jessup & Moore Paper Co.*, 3 *Boyce*, 544, 82 *Atl.* 540, were both mandamus cases, in which the court held that writs of error would lie, in the first case, to an order of the Superior Court making absolute a rule for a peremptory writ of mandamus and ordering that the writ issue, and in the second (on authority of the other one) to an order of the Superior Court holding sufficient a return to an alternative writ of mandamus. In the latter case the ground urged for dismissal was that the order was not a final one. There is nothing in either case of much weight on the matter now under consideration, except a statement in the case of *Union Church v. Sanders*, where in a very brief opinion the court said that the constitutional provision above referred to extended to the jurisdiction of the Court of Errors and Appeals by writs of error to judgments or decisions of a final character in any proceeding in the Superior Court. But we do not regard this as conclusive in this case; nor do we believe that the court would have held that a writ of error would lie to a decision of the Superior Court denying motions to quash a writ of *ad quod damnum*, or to vacate the return thereto. The manner of obtaining the review is determined not by the finality of an order, but by the character of the proceeding to be reviewed. If it be a summary, special statutory proceeding, such as is that under consideration here, then the remedy is certiorari and not a writ of error.

[5, 6] Certiorari was originally a writ of grace and not of

right, and one which was not granted if substantial justice has been done by the court below, even though the record should show technical errors or inaccuracies, and be for these reasons defective and informal. See *Newell v. Hampton*, 1 *Marvel* 1, 40 *Atl.* 469 (Court of Errors and Appeals). This feature of the writ does not now exist as a reason for preferring the writ of certiorari, because the writ has been made a writ of right and not of grace, though we are not convinced that the legislation was wise. See 21 *Del. Laws*, *c.* 118, *p.* 262, approved June 9, 1898. Still this feature of the writ as it existed prior to the above change may have been one of the causes of its adoption for the review of the judicial action of inferior tribunals. However, in accordance with the views of counsel for the parties, we will follow the course adopted by the court in *Jeans v. Jeans*, *supra*, and say that although the use of the writ of error in each of the cases now before us was irregular, yet as the record and parties are before us we will consider the cases as though they had been brought to us by writs of certiorari, and decide whether the proceedings therein referred to were legal or illegal.

There were two writs of error, one in the proceeding taken by the commission and the other that of the landowner, and the two cases were heard together. In the former case (No. 4) there are three assignments of error, and in the latter (No. 5) there are four. The three assignments under No. 4 are the same as the second, third and fourth assignments under No. 5, and will be considered together.

[7] The first assignment of error applies only to the application made by the landowner, and not to that made by the Commission. After the writ of *ad quod damnum* had been returned, the landowner, Elbert, moved for leave to abandon, discontinue and stay his proceeding, and the refusal to allow him to do so was assigned as error in this cause. We find no error in this refusal to grant this motion, and approve of the reasons assigned therefor by the court below.

[8] The other three assignments of error relate to both cases; *i. e.*, to the application of the landowner and to that of the commission. By the second assignment, the refusal of the court

below to quash the writs of *ad quod damnum* issued in each case is assigned as error. The ground for the motion to quash in each case is that the writs do not require the jury, in assessing damages which the landowner would sustain by the taking of his land, to take into consideration all the circumstances of benefit and detriment to result to the owner, but simply required them to assess the damages which the landowner would sustain by reason of the taking of his land.

It was urged, with some reason, that the provision requiring the jury in assessing the damages to the landowner to take into consideration all circumstances of detriment, if any there be, is a valuable one to an owner of land needed for some public purpose. Such a provision may be an enlargement of the right to compensation beyond the actual or intrinsic value of the land taken in cases where, as here, the whole and not a part only of the lot of land is taken. On the other hand, the provision may be applicable only to cases where a part of a tract is taken. On these points we do not deem it necessary to express an opinion. The adoption of either of these views would account for the existence of the provision in the act. It does not follow, however, that both of the writs should have been quashed because the provision above referred to was absent from each of them. One of these writs was applied for by the landowner, and the other by the commission. The landowner obtained the kind of a writ he asked for. It corresponded with his application, which was for a writ for a jury to assess his damages, and it did not contain a request that in assessing his damages the jury take into consideration all the circumstances of benefit and detriment to result to him by reason of the taking of his land. He may have failed to ask that his writ contain this requirement because there were no such circumstances of detriment, inasmuch as all of his land was taken and not a part only. Whatever be the reason for its omission, it is sufficient that it was omitted by the landowner from his own application. If the landowner obtained the kind of a writ he asked for, he cannot complain that it does not contain something he did not ask for. We find, therefore, that there was no error of the court in refusing to quash the writ of *ad quod dam-*

*num* issued on application of the plaintiff in error, Samuel G. Elbert.

[9]   We also find that there was no error in refusing to grant the motion of the landowner to quash the writ issued on application of the commission, although the writ as issued did not follow the application made by the commission for the writ.  Advantage of this cannot be taken by the landowner, because, as a separate proceeding from that instituted by the commission, he made his own application and had his own writ respecting the taking of the same land, and with the same men as jurors.  His proceeding, as will appear in this opinion, this court holds valid. If the landowner by a valid proceeding, instituted by him, is awarded damages for the taking of his land for a public purpose, he has obtained all that he is entitled to have.  A different question might have arisen if there had been but one application and one writ, and that the application and writ of the commission. Although there are two writs of *ad quod damnum* it was quite correctly assumed by counsel that if either of the proceedings be held valid, the taking of the land would be valid, provided the provisions of the statute as to the payment, or deposit of the damages awarded are complied with.

The third assignment of error is based on the refusal to vacate and set aside the returns to each of the writs, and all the reasons, it is said by counsel, relate to both writs.  There were twenty-two exceptions taken to each of the returns, but some of them were abandoned, and the others were consolidated into six, as appears from the brief of the counsel for the landowner at the hearing in this court.  These six reasons will be considered in the form in which they were stated by the counsel for the plaintiff in error and discussed by all of the counsel.

[10, 11] (a)  First reason under the third assignment of error:  Because the landowner was deprived of his right to challenge the jurors selected by the sheriff under the two writs.  It appears that pursuant to the two writs the sheriff selected and impaneled the same twelve men to constitute the jury in each case, and they were duly sworn.  No notice was given to the landowner as to when or where the jury would be selected, impaneled, or

sworn, and no statute or established practice required that any such notice be given. The first notice of the proceeding which the landowner received was notice from the sheriff that at a certain date and hour the jury would meet on the premises to view the same and assess the damages for the taking thereof. Subsequently, after viewing the premises the jury sat at the county courthouse to hear the parties, and the landowner appeared by counsel, and a full hearing of all parties by witnesses and otherwise was had. No objection was made at, before or during the trial to the competency of any juror, or to the proceeding based on the denial of any right to an opportunity to challenge, and no objection to the competency of any juror has ever been urged. The landowner has not been refused a right to challenge a juror, for he has not asked for a leave to so challenge. The landowner relies on the omission of the statute to furnish an opportunity to exercise the right which he claims to challenge jurors before they were sworn. His argument is that he has a right to challenge peremptorily and for cause, or, at least, he has a right to a challenge for cause, and inasmuch as there is a settled rule of law in trials by jury at bar, requiring the exercise of the right before the jurors are sworn, the failure to give him an opportunity to challenge before they are sworn invalidates the whole proceeding.

In proceedings to condemn land for public purposes by the use of the writ *ad quod damnum*, there is no right to challenge the jurors peremptorily; that is, without cause shown. No authority is shown which so holds. The history of the writ and the practice under it exclude such a right. It was, and is, a writ directed to the sheriff to inquire, by twelve impartial men as to the matter stated in the writ. This imposes on the sheriff a duty to select impartial men. Presumably, then, the sheriff obeys the command of the writ. In this respect the impaneling of a jury in a court of law, by selection by lot from a large panel summoned without regard to the parties to the cause to be tried, is very different. The right to a peremptory challenge in condemnation proceedings is not conferred by *Section* 19 of *Chapter* 109 of the *Revised Code*, which does not apply. The case of *Appeal of Converse*, 18 *Mich.* 459, 467, cited by the plaintiff in error, is quite in point.

28 Del.]          ELBERT vs. SCOTT, ET AL.                    15

Opinion.

We agree with the court below in their denial of the right to a peremptory challenge in such proceeding. It is probably true that a challenge for cause would be allowed. *Appeal of Converse*, 18 *Mich.* 459; *Canal Co. v. Archer*, 9 *Gill & J.* (*Md.*) 497. There does not seem to be any sufficient reason why this challenge for cause of jurors summoned under an *ad quod damnum* writ should not be available to a party even after the jury were sworn, if the challenge be made at the first opportunity. So, too, as it is the duty of the sheriff, under such a writ, to select impartial men, it is his duty to decide questions seasonably raised by a challenge of a juror for cause, and if the cause be by him regarded sufficient, to substitute another juror for the one disqualified, and require the new jury to do their work from the beginning, including another viewing of the premises.

But in this case the landowner, without at any time alleging the existence of any ground of challenge, or his desire to challenge, appeared before the jury and was heard as to the amount to be awarded him as his damages. He cannot, after the award is made, raise the objection that he had no opportunity to challenge. The court below was right in refusing to vacate the return and in holding insufficient the reasons upon which such motion was based.

[12-14] (b) Second reason under the third assignment of error: Because the return failed to show that the jury was properly sworn. By the return it appears that the jury were "severally sworn or affirmed according to law," but the record does not disclose the form of the oath or affirmation taken by the jurors. It is objected by the landowner that it should appear that the jurors were sworn or affirmed to view the premises and assess the damages which will result to the owner by reason of the taking of his land for the purposes mentioned in the act, taking into consideration all the circumstances of benefit and detriment to result to such owner. There are several reasons why this contention is untenable. The record before the court is that brought here by the landowner as plaintiff in error in both cases, and as the form of the oaths taken do not appear in the record, it does not appear that the jury has not taken the oath in the form

insisted upon by the landowner. Again, he is not entitled to have the jury sworn in the form he now says is required, because in his application for a writ he has not asked that the jury take into consideration detriment to him, and the writ does not require this of them. Again, the statute does not prescribe a form of oath, or even require that the jurors be sworn. It provides that the writ of *ad quod damnum* be issued requiring the sheriff "in the usual form to inquire of twelve impartial men of the damages as aforesaid." In the usual form of the writ, and in the form used in this case, the sheriff was commanded to inquire of twelve impartial men "under their several oaths and affirmations of the damages" to the landowner, etc. Again, by the weight of authority and reason, we agree with the court below that this ground for setting aside the return is insufficient, and that the return is sufficient if it appears therein that the jurors were sworn or affirmed according to law, in the absence of a requirement of statute, or the prescription by the statute of a particular form of oath.

[15] (c) Third reason for the third assignment of error: Because the return failed to show that the jury took into consideration all the circumstances of benefit and detriment to result to the owner from the taking of his land. The question thus raised is disposed of by applying the principles announced herein respecting the motion to quash the writ. As we hold the landowner's writ valid because it corresponded with the application made by him for the writ, so we hold that the return to it was a valid one, though the return failed to show that the jury took into consideration all the circumstances of benefit and detriment to result to the owner from the taking of his land. The return to the landowner's writ need not state that the jury in assessing damages took into consideration all circumstances of detriment, for they were not required to take such circumstances into consideration by the writ obtained by the landowner, which writ, as stated above, corresponded in this respect with the application made therefor by the landowner.

[16] For the reasons hereinabove expressed, in disposing of the motion of the landowner to quash both writs, we find no error

based on the refusal of the court below to vacate the return made to either of the writs. In other words, though the return to the writ issued on the application of the commission did not show that the jury took into consideration all the circumstances of detriment, and in that respect did not conform to such application, though it conformed in this respect to the writ, still the landowner whose writ and return are in this respect valid, cannot take advantage of the fault in the other writ, or in the return to it. A different question would be raised if the commission only had applied for the writ and the landowner had not.

[17] (d) Fourth reason for the third assignment of error: Because the jury after the close of the case took to their jury room and considered notes of testimony made by a stenographer. At the hearing of the exceptions to the return the court properly heard testimony respecting the matters raised by the exceptions, and in this method learned that a stenographer had been engaged at the request of the jury to take notes of the testimony and took notes of all the testimony adduced before the jury sitting to assess the damages of the landowner, Elbert. This was done probably because the jury found it impossible to remember, or conveniently make notes of all the data consisting largely of figures, calculations, estimates, etc. There is no point made that the notes of the evidence were not correctly taken. Afterwards they were before the jury, at their request, prior to their making their report and award. Whether the parties objected, or consented, to the stenographer's notes going to the jury does not appear. Papers not admitted in evidence cannot go before a jury ordinarily, but no authority is shown why in cases of a sheriff's jury under a writ of *ad quod damnum* in condemnation proceedings the jury should not have access to the transcribed stenographic notes of the testimony of witnesses heard by the jury, the notes being made for and given to the jury at their request, and without objection so far as appears. A report should not be set aside on such ground, under such circumstances.

[18] (e) Fifth reason under the third assignment of error: Because the jury separated after the close of the evidence and argument before they rendered their verdict. We find no error

in the ruling of the court below in refusing to set aside the report for the reason above stated, and agree not only with the conclusion of the court below on this point, but also their reasons.

[19] (f) Sixth reason for the third assignment of error: Because the procedure adopted by the sheriff and jury of condemnation did not constitute due process of law. This reason was not urged in the court below. It is urged here that the deprivation of an opportunity to challenge the jurors before they were sworn, and the dispersion of the jury after hearing the evidence and before making their award, show that there was not a regular and orderly course of procedure in determining the rights of the landowner as compensation for the land taken. There was clearly in this case an orderly and regular proceeding for ascertaining the extent in money of the injury to the landowner for the taking of his lands for a public purpose, wherein the owner was by the act, and the procedure prescribed thereby, secured in a right to reasonable notice and an opportunity to be heard before a jury of impartial men, whose finding was returnable to and subject to confirmation by a competent court of record. Clearly, then, the procedure by which the landowner's damages were assessed was due process of law, under every known definition thereof.

[20] While we will affirm the judgments below, we take this opportunity of saying that, speaking generally, the proceedings for taking of private property for public uses should be pursued strictly in accordance with the legislative authority for such proceedings, and it is always a safe rule to have it appear of record that all the statutory requirements respecting the exercise of the right of eminent domain have been observed.

In deciding the technical questions raised by the plaintiff in error in both cases, we have considered them as technical questions, inasmuch as there is not here, either in the record, or briefs, or oral argument, any allegations of injustice, injury, oppression, surprise, accident, or mistake; nor are any facts shown from which such may be even inferred. For aught that appears, the landowner, by a regular proceeding, after due notice and full

28 Del.]            ELBERT  vs.  SCOTT,  ET  AL.                19

Opinion—Judgments Affirmed.

hearing, obtained an award of damages assessed in the manner asked for by him, and in such case the court should not lightly undo what has been so done.

The judgment of the court below in each case is affirmed.