PAUL F. THOMPSON, Defendant Below, Plaintiff in Error, *vs.* ELSIE I. THOMPSON, Plaintiff Below, Defendant in Error.

(*January 17, 1928.*)

Wolcott, Chancellor, Pennewill, C. J., Rice, Harrington, and Rodney, J. J., sitting.

*Robert Adair* for the defendant below, plaintiff in error.

*Philip L. Garrett* for the plaintiff below, defendant in error.

Supreme Court, No. 4, June Term, 1927.

RODNEY, J., delivering the opinion of the Court:

The matter of chief importance in this case, as well as of interest, concerns the propriety of a review of divorce proceedings by this court by means of a writ of error. The material provisions of the divorce statute are embodied in the statement of facts and provide, *inter alia*, that a *decree nisi* shall become final at the expiration of one year "unless appealed from." No method of appeal is provided by the statute in question nor does any general statute attempt to provide any means of bringing, by appeal, before this court for review the record or proceedings in any analogous case from a court of law.

The jurisdiction of the Supreme Court is conferred by the *Constitution* (*article* 4, § 12) in somewhat elaborate terms. Provision is made for the issuance of writs of error, certiorari, mandamus and writs of prohibition. There is no suggestion of any right of review by this court, by appeal, of the general proceedings of the Superior Court or of any other court of law. Appeals are provided for in two instances only; viz, from the Court of Chan-

cery and in the election cases specifically mentioned in *article 5 of the Constitution.*

It seems to be well established in the law that, in the absence of special constitutional or statutory provisions, the remedy by a writ of error is confined to the review of judgments rendered in courts of record where the proceedings follow the course of the common law. 3 *C. J.* 308. The reasons assigned for this rule are not always satisfactory in view of modern legislative activities. The Court of Errors and Appeals of this State in the divorce case of *Jeans v. Jeans*, 3 *Harr.* 136, adverted to the foregoing principle and said:

"It is true that a writ of error lies only where the proceedings are according to the course of the common law; and for this reason, that where the proceedings are summary and the matter of the jurisdiction compounded of law and fact is referred to the discretion of the particular tribunal, the Court of Error is not authorized to render the proper judgment."

The court then held that a writ of *certiorari* was the proper remedy in a divorce case to bring the proceedings of the inferior tribunal under review, but having the record and the parties before it considered the writ of error as a *certiorari* and retained its appellate jurisdiction. It is somewhat difficult to entirely follow the reasoning of *Jeans v. Jeans.* It is not easy to determine why a divorce case, where the parties are in court pursuant to the service of process, are represented by counsel, and are supported by oral testimony, should be designated as a summary proceeding unless such term is used in its strict and technical sense as indicating any case where the proceeding does not follow the strict course of the common law, even though the only departure therefrom is the action of the court without the intervention of a jury; nor is it easily understood why the appellate court might not give as correct a judgment where the proceedings are by writ of error as the same court could where the proceedings are by *certiorari.* One thought concerning *Jeans v. Jeans* may, however, be important. At the time it was determined (1840) the practice under the writ of *certiorari* was vastly different from at present. In the early Delaware practice the rule that in *certiorari* proceedings the reviewing court was confined to an inspection of and a decision

upon the record was subject to many modifications and exceptions. Many instances could be cited at and about the time of *Jeans v. Jeans* where evidence *aliunde* was taken to establish facts dehors the record. See 1 *Woolley*, § 897.

But as set forth in *Woolley's Delaware Practice*, § 898:

"*. * * The rule and practice of the court for forty years has been to confine the review on *certiorari* to the record as sent up in obedience to the writ. Repeated efforts have been made in recent years in *certiorari* cases to introduce evidence *aliunde* based upon the early decisions, but without success; and it may now be accepted as established practice that the court will not go behind the record for the purpose of establishing jurisdiction or of proving any other fact."

At the time of *Jeans v. Jeans* it may be that the appellate court could have gotten the entire proceedings before it and thus have been as able to determine all questions in *certiorari* proceedings as on writ of error.

With particular reference to a proceeding of divorce a writ of *certiorari* might now be effectual in getting the bare record before the appellate court, but it is difficult to see how, upon such a writ, the legality of the admission or exclusion of evidence or other proceedings upon which the decree or final judgment was rendered might be presented for review. The bare record may be without flaw upon *certiorari* but there may have been a want of legal evidence to support the decree.

It seems to be a generally favored policy that a complete and adequate administration of justice requires that a litigant should be entitled to have his rights examined or reviewed in a tribunal superior to that by which he considers himself aggrieved. This is subject to the exception of certain cases where the smallness of the amount or other things in controversy or the necessity of expedition in the conduct of cases requires an abridgment of the right of review.

Some fifteen years after *Jeans v. Jeans* was decided the case of *Union Church v. Sanders*, 1 *Houst.* 100, 63 *Am. Dec.* 187, came before the Court of Errors and Appeals. Two of the three Judges who sat in *Jeans v. Jeans*, viz., Chancellor Johns and Chief Justice Harrington, sat also in the later case. In *Union Church v*

*Sanders* a peremptory writ of *mandamus* had been awarded and from this judgment the writ of error was sued out. A motion to quash the writ of error on the ground that it could only issue where the proceedings followed the course of the common law was refused. The court, by Johns, Chancellor, held:

"The court has come to this conclusion upon what it considers as a reasonable construction of the clause in the seventh section of the sixth article of the Constitution, which provides that this court 'shall have jurisdiction to issue writs of error to the Superior Court, and to determine finally all matters in error in the judgments and proceedings of said Superior Court,' and which, for this purpose, places the judgments and proceedings of that court upon original and on other than the common-law grounds, and extends the jurisdiction of this court by writ of error to judgments or decisions in any proceedings in the Superior Court of a final character."

The pertinent section of our present Constitution of 1897 being *article* 4, § 12, contains precisely the same language as the older Constitution passed upon by the court in *Union Church v. Sanders*.

The Court of Errors and Appeals in *Union Church v. Sanders* held that whether or not a writ of error would lie was to be determined by the provisions of the Constitution. This case has been followed by *Knight v. Ferris*, 6 *Houst.* 283; *McCoy v. State*, 2 *Marv.* 543, 36 *A.* 81; *Brumley v. Jessup & Moore Paper Co.*, 3 *Boyce* 544, 90 *A.* 83. To the same effect was *Rowland v. Hickman*, 4 *Harr.* 478, where the Court of Errors and Appeals quashed the writ of error issued to the Court of General Sessions as having been improvidently issued not being given by the Constitution.

Such then was the state of the law when this court considered *Elbert v. Scott*, 5 *Boyce* 1, 90 *A.* 587. That case involved an *ad quod damnum* proceeding and a writ of error was issued to the Superior Court. On a motion to dismiss the writ of error because the proceedings were not according to the course of the common law the court considered the cases hereinbefore referred to.

The court held:

"* * * The manner of obtaining the review is determined not by the finality of an order, but by the character of the proceeding to be reviewed. If it be a summary, special statutory proceeding, such as is that under consideration here, then the remedy is *certiorari* and not a writ of error."

It must of course be conceded that *certiorari* would lie

in the case then considered by the court. It may have been fully adequate, as it doubtless was, to reach the contested questions there sought to be reviewed. While we are of the opinion that a *certiorari* is the proper remedy to review proceedings of an inferior court where such proceedings do not follow the course of the common law and where such writ will bring before this court the questions in dispute, yet we are of the opinion that *certiorari* is not the only remedy available in all such cases.

We think that having in mind the liberal appellate powers of this court as conferred by the Constitution and the desirability of having error, if existent, corrected, we should liberally construe such appellate powers so as to give to the parties an opportunity to have the contested questions passed upon by this court.

The courts of Delaware seem to have been diligent in their efforts to prevent mere procedural irregularities from interfering with appellate rights. In *Jeans v. Jeans, supra,* and *Elbert v. Scott,* the court considered the writs of error as *certiorari* and in *Union Church v. Sanders* the court considered the writ of error as the correct proceeding. *Donaghy v. State,* 6 *Boyce* 467, 100 *A.* 696, was a case involving nonsupport and was brought to this court by *certiorari.* The court considered the evidence of the court below as if the matter had been presented by writ of error. At *page* 534 (100 *A.* 724) the court said:

> "The case has been considered in this court as though the evidence produced in the court below was properly made a part of the record and, therefore, reviewable. But on a *certiorari* questions of law and not of fact are reviewable. *Bailey v. Luff,* 2 *Harr.* 292. Evidence is gotten into the record of the court below by a bill of exceptions, which is not appropriate to a writ of *certiorari,* but to a writ of error. Inasmuch, however, as the record, including the testimony taken by the court below, as well as the parties, are before this court, this court has power to, and should, determine the questions raised by the assignments as if there had been a writ of error instead of a writ of certiorari. This course was pursued by the Court of Errors and Appeals in *Jeans v. Jeans,* 3 *Harr.* 136, where there was a writ of error when there should have been a writ of *certiorari.*"

Under all the circumstances, we are of the opinion that a writ of error is an allowable method to review the assigned error in a divorce case where it is the only method of presenting the

error complained of. We fail to see why the dry husk of remedial form should be used to prevent the right of review. Such would be the case if *certiorari* were the only remedy in divorce cases because the testimony in connection with which the alleged error occurred would not be presented to this court by such writ.

■ The Divorce Act plainly indicates that appellate proceedings of some nature were contemplated. It is true that under the statute the *decree nisi* is made final "unless appealed from." It is also true that in its strict and appropriate sense the term "appeal" has a technical meaning dissimilar from a writ of error. [1] As stated in 2 *Encl. of Pl. and Pr.* 324, however:

"The mere use of the term 'appeal' in a statute affords no certain guide as to its effect. The general policy of the law and reasons drawn from analogy and from the practical consequences must be resorted to to determine its operation."

We do not think that by the mere use of the term "unless appealed from" the Legislature attempted to create any technical remedy of appeal.

■ We are of the opinion that a writ of error may issue from this court in a divorce proceeding. Of course, such writ will only bring into the record to be considered by this court such matters of fact as shall have been reserved for review by exceptions duly taken. This then brings us to the concluding question in the case. We are not concerned with any questions as to the admission of evidence for no exception was noted during the entire trial.

■ The motion of the court below to set aside the *decree nisi* because the evidence, assuming it all to be true, did not warrant or justify the entry of the decree necessarily brought before the trial judge, and thus into the record, all the evidence in the case to the same extent as if the evidence has been physically made a part of the record by being attached to the petition to set aside the *decree nisi*. In such manner the trial judge evidently considered it when he signed the bill of exceptions including the testimony. We have, therefore, considered the evidence in its entirety—not with the view of determining whether we would have reached

---

[1] Sohland *v.* Baker, 15 Del. Ch. 431.

the same conclusion as the trial judge—but with the view of ascertaining whether there was any ground for the conclusion reached by him. Since the propriety of granting a decree in each divorce case depends entirely upon the facts of each particular case including the manner and bearing of the witnesses, we can conceive of no useful purpose in extending this opinion by the inclusion and discussion of the evidence. It is sufficient to say that we see no error in the record of proceedings and the judgment below will be affirmed.