THE STATE OF DELAWARE, upon the relation of Frank P. Walker, v. WILLIAM WATSON HARRINGTON, Chancellor of the State of Delaware, and CHARLES L. TERRY, JR., Associate Judge of the State of Delaware, Resident in Kent County, constituting the Superior Court of the State of Delaware, pursuant to Section 6 of Article V of the Constitution of the State of Delaware, and as such the Board of Canvass in and for Kent County, State of Delaware.

(*June* 16, 1942.)

LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*William J. Storey* and *P. Warren Green* for relator.

*Howard E. Lynch, Jr., Josiah O. Wolcott, Jr., Stewart Lynch and Daniel L. Herrmann,* Amici Curiae.

Supreme Court, No. 1, January Term, 1942.

24

SPEAKMAN, J., delivering the opinion of the majority of the Court:

We will consider the suggested questions in the order in which they are stated:

1. Amici Curiae suggest that the Supreme Court of Delaware lacks jurisdiction to issue writs of mandamus to a Superior Court sitting as a Board of Canvass.

In Section 12 of Article IV it is provided that

"The Supreme Court shall have jurisdiction * * * To issue writs of * * * mandamus to the Superior Court * * * or any of the judges of the said [court], * * *. The General Assembly shall have power to provide by law of what judges the Supreme Court shall consist for the purpose of this paragraph * * *."

The statute enacted by the General Assembly pursuant to the constitutional mandate is Section 4266 of the Revised Code of 1935. This statute provides that:

"The Supreme Court, for the purpose of issuing, hearing and determining any writ of * * * mandamus to the Superior Court, * * * or to any of the Judges of the said [Court], shall consist of all the Judges who did not sit in the cause below."

Amici Curiae place great stress on the use of the phrase "shall consist of all the Judges who did not sit in the cause below," in the above statute, and they argue at great length concerning the meaning of the word "cause."

It is sufficient to say that the jurisdiction of the Supreme Court is defined in the Constitution and that its jurisdiction cannot be impaired or restricted by language contained in any legislative act.

It is suggested by the Amici Curiae that the jurisdic-

tion vested in the Supreme Court to issue writs of mandamus to the Superior Court or any judge thereof is confined to the power to issue the writ to the Superior Court, or any judge thereof, sitting as a judicial and inferior tribunal and exercising the judicial function, and that by the use of the words "Superior Court * * * or any of the Judges of the said [Court]," in the grant of power to the Supreme Court to issue writs of mandamus, without enlargement or explanation, there is an ambiguity, and that it is necessary and expedient to seek interpretation of those words by recourse to the Constitutional Debates.

Their specific contention is that "the Superior Court, sitting as a Board of Canvass with no functions or duties other than the ministerial and administrative function of arithmetically computing votes is not an 'inferior tribunal' or a 'Superior Court' within the meaning of Article IV, Section 12 (5) of our Constitution." To support their contention they refer us to the Constitutional Debates, and in their brief they rely solely on the remarks of Judge Bradford, a member of the Convention.

We are unable to see how they can properly say that Judge Bradford's remarks support their contention. It appears to us, in speaking of prohibition, he was illustrating a use of prohibition instead of giving a comprehensive definition of it. He said:

"Where an inferior tribunal is acting in excess of its jurisdiction, it becomes very salutary indeed that they should not permit a case to drag along its whole length in that inferior court with costs accumulating and that, if it should be made to appear to the Supreme Court, the lower Court, has no jurisdiction, it shall lay its hands upon the lower Court and say 'stop.' That is the function of a writ of prohibition."

Continuing, he said:

"We all know what a writ of mandamus is. It is a writ which commands the doing or the performance of a plain legal duty.

"You will perceive that in this proposed amendment these proposed writs of prohibition, certiorari and mandamus are to issue to the Superior Court, the Court of General Sessions and the rest of the Courts, or any of the Judges of the said Courts. For instance, in taking a writ of error the Judge should refuse to sign a bill of exceptions properly tendered, or if any one of the Judges of these Courts should omit and decline to perform a *specific legal duty* which is imposed upon him by law, then the Supreme Court, upon proper application, shall have the right by mandamus to compel the signing of a bill of exceptions, for instance, or for the compliance of any other *plain legal duty.*"

Nothing that Judge Bradford said would warrant the conclusion that the issuance of the writs were to be limited to "inferior tribunals." From his remarks, it is apparent that it was proposed that the writs were to issue to certain designated Courts, one of which under the Constitution in some instances, sits as a Court of last resort. The writs were also to issue to the Judges of the said designated Courts, who are neither courts nor inferior tribunals.

Before resorting to Constitutional Debates or other sources, or indulging in speculation concerning the meaning of any particular provision in our Constitution, we should first seek its true interpretation by applying the following rules of construction.

In construing the language of a constitution the words used, unless they are technical, are to be understood in their usual and ordinary sense. *Rash v. Allen,* 1 *Boyce* 444, 76 A. 370, and in determining the meaning of any particular provision, the whole instrument must be considered. *State ex rel. Biggs v. Corley,* 6 *W. W. Harr.* (36

*Del.*) 135, 172 A. 415. And if the meaning of the provisions can be clearly ascertained the proceedings of the Constitutional Convention adopting the provision are entitled to but little consideration by the Court in construing the provision. *State v. Fountain,* 6 *Penn.* 520, 69 *A.* 926. This is but to say that no forced or artificial construction is unnecessarily to be put upon the language.

In *Sturges v. Crowninshield,* 4 *Wheat.* 122, 202, 4 *L. Ed.* 529, the Supreme Court of the United States adopted this doctrine and said:

"Although the spirit of an instrument, especially of a constitution, is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempt from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application."

The language of the provision that "The Supreme Court shall have jurisdiction * * * To issue writs of * * * mandamus to the Superior Court, the Court of Oyer and Terminer, the Court of General Sessions, the Court of Chancery and the Orphans' Court, or any of the judges of the said courts, * * *" (Art. IV, Sec. 12, par. (5), is a clear

grant of power to the Supreme Court, unlimited in extent, yet it is suggested by the Amici Curiae that the purposes, meaning and scope of this language was to grant to the Supreme Court the power to issue writs of mandamus to the designated courts, as inferior tribunals, in aid of the Supreme Court's appellate jurisdiction. If such was a meaning, purpose and scope of the language, it was not its sole purpose, meaning and scope, as the Supreme Court by the provision is granted the jurisdiction to issue writs of mandamus to the Orphans' Court, or any of the Judges of the said Court, notwithstanding the fact that the judgments, decrees and orders of the Orphans' Court are not subject to review by the Supreme Court. It, of course, follows that the jurisdiction of the Supreme Court is not limited to such an extent.

██ Amici Curiae also suggest that the jurisdiction vested in the Supreme Court to issue writs of mandamus to the Superior Court or any judge thereof, is confined to the power to issue the writ to the Superior Court, or any Judge thereof, sitting as a judicial and inferior tribunal and exercising the judicial function. The words "inferior tribunal" have more than one meaning. The Superior Court is a court of general common law jurisdiction, and in that sense it is not an "inferior tribunal." We will assume that the words "inferior tribunal," as used by the Amici Curiae, are used in the general sense as applying to those courts from which an appeal lies to, or to which a writ of error issues from a higher court.

██ By Section 11 of said Article IV of the Constitution, the Superior Court is given final jurisdiction on appeal from certain decisions of the Orphans' Court. In receiving and hearing such appeals the Superior Court sits as a court of last resort, and not as an inferior tribunal. In such cases under the provision, read as suggested, the Supreme Court would lack jurisdiction to issue writs of man-

damus to the Superior Court, as a court of last resort, or to any Judge thereof, but read as written the jurisdiction exists, and an aggrieved party could look to the Supreme Court for relief. We do not believe that the jurisdiction is so limited. If we hold otherwise we would be giving clear language a forced and unnatural meaning.

It is further suggested by the Amici Curiae that "the" Superior Court sitting as a Board of Canvass is not an inferior tribunal or "a" Superior Court within the meaning of Article IV, Section 12, paragraph (5) of the Constitution. We think that "the" Superior Court sitting as a Board of Canvass is "the" Superior Court established by said Article IV. Manifestly, under our Constitution, there is but one Superior Court. Its jurisdiction, which is co-extensive with the State, is conferred by Sections 5 and 11 of Article IV of the Constitution, its duties, with respect to elections, are defined in Section 6 of Article V of the Constitution, and it is the Superior Court referred to in paragraph (5), Section 12 of Article IV of the Constitution. The fact that said Section of Article V provides that for the purposes of the section the Chancellor shall be a member of the Court in Kent County does not evidence the creation of more than one Superior Court.

We think the members of the Convention, many of whom were able lawyers, clearly evidenced their intention of the meaning of the provisions in question by the selection of words of plain, distinct and perfect meaning. They have conferred on the Supreme Court five separate and independent grants of jurisdiction by Section 11 of Article IV of the Constitution. By the first four grants the Court is made the court of last resort for the purpose of reviewing the judgments and decrees of the Courts therein named. By the fifth grant the Court is made the Court of first resort for the purpose of the issuance as original writs the writs of prohibition, certiorari and mandamus to the Superior Court and

the other Courts therein named, or to any of the Judges of the said Superior Court, or other Courts.

If we should accept the views of the Amici Curiae that it was the intent of the framers of the Constitution that the jurisdiction vested in the Superior Court to issue writs of mandamus is confined to the power to issue the writs to the Superior Court or any Judge thereof, sitting as a judicial and inferior tribunal and exercising the judicial function, we would be compelled to hold that it would be within the power of the Superior Court or any of its Judges to neglect or refuse to perform any specific, non-judicial legal duty imposed upon it or him by the Constitution or laws of this State, and that the State or any injured party, would be without a remedy, as the only other Court with the jurisdiction to issue writs of mandamus within this State is the Superior Court, and it would be an anomalous situation to hold that a Court with both judicial functions and ministerial duties could judicially command itself or any of its Judges to perform some ministerial act.

We think the language of the provision in question is clear and unambiguous, and that it should be read literally, therefore, in our opinion it is within the jurisdiction of the Supreme Court, in all proper cases to direct its writ of mandamus to the Superior Court as a Court, or as a Board of Canvass, or to any of the Judges of the Court. in his official capacity.

2. Amici Curiae suggest that the Supreme Court has no appellate jurisdiction over or power to review the acts of the Superior Court, sitting as a Board of Canvass.

The appellate jurisdiction of the Supreme Court is conferred by the Constitution. Appeals to the Supreme Court are provided for in two instances only: viz., from the Court of Chancery and in the election cases [from the Court of General Sessions] specifically mentioned in

Article V of the Constitution. *Thompson v. Thompson,* 3 *W. W. Harr.* (33 *Del.*) ,593, 140 A. 697, 698. Such jurisdiction as the Supreme Court has to review the judgments and proceedings of the Superior Court is by writ of error. This jurisdiction as defined by the Constitution is: "To issue writs of error to the Superior Court and to determine finally all matters in error in the judgments and proceedings of said Superior Court."

In *Thompson vs. Thompson, supra,* this Court said:

"It seems to be well established in the law that, in the absence of special constitutional or statutory provisions, the remedy by a writ of error is confined to the review of judgments rendered in courts of record where the proceedings follow the course of the common law." Citing 3 C. J. 308.

It, of course, cannot be contended that the canvass of election returns is a proceeding which follows the course of the common law, therefore we agree with the Amici Curiae that the acts of the Superior Court, sitting as a Board of Canvass, are not subject to review by the Supreme Court on appeal or by writ of error.

3. Amici Curiae further suggest that since the Supreme Court lacks appellate jurisdiction over the Superior Court, sitting as a Board of Canvass, it may not review the proceedings of respondents by mandamus proceedings.

We do not understand that it is claimed by the relator that a writ of mandamus will issue where any other remedy exists which is fully adequate, or that it can be used as a substitute for a writ of error. That the privileges and duties of the respondents are not subject to be reviewed by writ of error or upon appeal is not open to dispute. *Thompson v. Thompson, supra,*—A writ of mandamus will issue however "where there is a clear and specific legal right to be enforced, or a duty which ought to be and can be per-

formed, and where there is no other specific and adequate legal remedy." *Swift v. State*, 7 *Houst.* 338, 6 A. 856, 861, 32 A. 143, 40 *Am. St. Rep.* 127.

4. It is further suggested by the Amici Curiae that the respondents have performed all the duties prescribed by law and are, therefore, functi officio as a Superior Court, sitting as a Board of Canvass.

This is disputed by the relator. By his petition he seeks to compel, by mandamus, the performance of the ministerial duty to canvass the election returns. Such canvass, if properly made, must be exclusively from the legally designated sources. The Amici Curiae have conceded that the case of *McCoy v. State*, 2 *Marv.* 543, 36 A. 81, for the purpose of certain phases of the argument on the questions under consideration stands as the law of this State as to the powers, duties and functions of Boards of Canvass, where such powers, duties and functions have not been changed or modified by statute or otherwise. We are unable to determine with certainty, from the briefs of the Amici Curiae, the extent of their concession. We think the McCoy case is decisive of the suggestion under consideration. It was decided on January 4, 1897, by the Court of Errors and Appeals, then the highest Court in our State. Our present Constitution was adopted on June 4, 1897. The decision was in no way modified, either directly or indirectly, or by implication, by any language in the Constitution. On the other hand, by providing in Section 6 of Article V that "The said [Superior] court shall have all other the jurisdiction and powers now vested by law in the boards of canvass, * * *", the convention accepted and gave sanction to, the language of the McCoy case, at least, insofar as it construed the powers, duties and functions of boards of canvass, and this is particularly so in view of the fact that the Constitution was adopted by the Convention and was not subject to subsequent ratification by a vote of the people.

However, the Amici Curiae claim that the McCoy case has no value in those instances where any change has been effected in the intervening years. They call attention specifically to said Section 6 of Article V of the Constitution, wherein it is provided that the Superior Court, sitting as a Board of Canvass, "shall have * * * such other powers as shall be provided by law," and they say in effect that pursuant to this authority an additional power and duty was vested in Boards of Canvass by the General Assembly by the Act (*Chap.* 60, *Art.* 4, *Revised Code* of 1935), which provided for the canvassing of the votes cast by the qualified voters in the military or naval service of the State or United States, and as such absent from the election districts of their residence on the days appointed by law for the holding of certain elections, the election in question being one of such elections.

In the McCoy case [2 *Marv.* 543, 36 A. 83] the Court said:

"For until the Board [of Canvass] 'has calculated the aggregate amount of all the votes for each office which shall have been given in all the hundreds and election districts of the county for every person voted for for such office,' to quote the statutory language, and signed and sealed the prescribed certificates, it cannot be deemed, in legal contemplation, to have fulfilled the purpose of its creation, exhausted its powers, and become functus officio."

The Court further said:

"That the duty is to compute, exclusively from the prescribed certificates of the election, all the votes actually given in all the hundreds of this county."

The fact that the Court spoke of the votes given in the Hundreds and Election Districts of the County, and the pre-

scribed certificates of the votes given in the Hundreds, does not destroy the effectiveness of the McCoy case.

The important thing to determine is whether the respondents have calculated the aggregate amount of all the votes exclusively in the prescribed manner, and have signed and sealed the prescribed certificates showing the result of the canvass. If they have not done so they would not be functi officio.

The determination of the question as to whether or not the respondents have performed all the duties prescribed by law cannot be decided without considering the constitutionality of the Act to enable those in the military or naval service to cast their votes outside of the election districts of their residence (*Chap.* 60, *Art.* 4, *Revised Code* of 1935). Argument on the constitutionality of this Act was deferred until after the disposition of the jurisdictional questions suggested by the Amici Curiae.

5. Amici Curiae further suggest that the Supreme Court should not entertain original jurisdiction of a mandamus proceeding, the sole object of which, in the last analysis, is a contest of title to public office.

It is not disputed that in mandamus proceedings the title to an office cannot be inquired into and determined. It was so held in the McCoy case. In this proceeding we are concerned solely with the question whether or not this Court has the jurisdiction to grant the relator's prayers, and not with a contest of title to public office.

6. The Amici Curiae further suggest that the Supreme Court should not entertain original jurisdiction of a mandamus proceeding by which it is sought to correct an alleged error in the executed and completed act of the respondents.

They say that the gist of the relator's petition is not that the respondents failed to perform any item of its con-

stitutional or statutory duty, but that the respondents did more than was required by law and in doing so acted erroneously.

They cite *Board of Supervisors v. Combs,* 160 Va. 487, 169 S. E. 589, 593, where the following language appears:

"A mandamus is always granted to compel the performance of some duty which has not been done. * * * It is not granted to undo an act already done. The court will not allow the validity of the act done to be tried in this way. 'We grant it,' said Lord Campbell, 'when that has not been done which a statute orders to be done; but not for the purpose of undoing what has been done.'"

We do not disagree with this language. The very question before us is whether the respondents have done everything the constitution and statute orders to be done. If the statute in question (*Chap.* 60, *Art.* 4, *Revised Code* of 1935) is constitutional they have; if the statute is unconstitutional they have done nothing beyond canvassing the vote given for the respective candidates in all the hundreds and election Districts of Kent County. Until they have signed and sealed the prescribed certificates of the result of such vote they have not done everything required by law.

7. And lastly, the Amici Curiae suggest that the Supreme Court should not entertain original jurisdiction of a mandamus proceeding founded upon the alleged invalidity of a statute.

They contend that the respondents, acting as a Board of Canvass, had no power to consider the constitutionality of any statute or the legality of any votes and they say that a ministerial officer should not be required under the penalty of being subjected to a mandamus proceeding to pass upon

the constitutionality of a statute apparently governing his actions.

The cases are not uniform as to the right of a purely ministerial officer to question the constitutionality of a statute imposing a duty upon him.

As to the right of a mere subordinate ministerial officer to so question the constitutionality of a statute, it has been said that the better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be questioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable by acting under a void statute. 16 *C. J. S., Constitutional Law*, § 82.

But after all, the question before us is not whether it was or was not the duty of the respondents to pass upon the constitutionality of the statute in question, the question is whether or not it is our duty to do so.

The Amici Curiae say that we should refuse to entertain jurisdiction in such a case, and that we should refuse to consider or determine the constitutionality of a statute in a mandamus proceeding, and in support of this they cite *Sharpless v. Buckles*, 65 *Kan*. 838, 70 P. 886; *Burke v. State Board*, 152 *Kan*. 850, 107 P. 2d 787; and *Comley v. Boyle*, 115 *Conn*. 406, 162 A. 26.

In 34 *Am. Jur.* 871, it is stated that

"The question of constitutionality is frequently interposed by a petitioner or relator in mandamus when he claims that a statute or ordinance which, if valid, would excuse the respondent from performing the duty or act in question is

invalid. There seems to be no reason why the constitutionality of the Act thus relied on may not be raised in such manner and most of the Courts have taken this view."

In support of the text many cases are cited.

In *Marbury v. Madison,* 1 *Cranch* 137, 179, 2 *L. Ed.* 60, mandamus was resorted to for the purpose of compelling the respondent to deliver a commission, which had been signed by the President, to the relator as a justice of the peace, and the principal question was as to the constitutionality of the law which imposed the duty on the respondent. There was no discussion as to the right of the respondent to raise the question. The question was raised by the Court. It said:

"In some cases, then, the constitution must be looked into by the judges. And if they can open it at all, what part of it are they forbidden to read, or to obey?"

In *Board of Liquidation v. McComb,* 92 U. S. 531, 541, 23 *L. Ed.* 623, Mr. Justice Bradley, speaking for the Court said:

"In either case, if the officer plead the authority of an unconstitutional law for the non-performance or violation of his duty, it will not prevent the issuance of the writ [of mandamus]".

In *State ex rel. Fooshe v. Burley,* 80 S. C. 127, 61 S. E. 255, 257, 16 L. R. A., N. S., 266, the appellant contended that if an officer could not assert the unconstitutionality of a statute, he should not be compelled to ignore it as unconstitutional. The Court held that

"This plausible suggestion is met * *. * by the fact that the petitioner who attacks the constitutionality of the statute is not an officer whose duty it is to act under it, but one who

not only has the general interest as a citizen and taxpayer, but also a special pecuniary interest * * *."

The Court held mandamus to be a proper remedy.

To *State ex rel. Fooshe v. Burley,* there is a case note in 16 *L. R. A.* (*N. S.*) at page 266, on the right of a relator in mandamus proceedings to attack the constitutionality of a statute relied upon by the respondent. In support of the note, cases are cited from a number of States. *Sharpless v. Buckles, supra,* the case chiefly relied on by the Amici Curiae, is cited as holding a contrary view. The annotator makes this comment on the Sharpless case:

"This doctrine [that it was neither the right nor duty of the Board to pass upon the constitutionality of a statute which imposed a duty upon it] appears to confuse the duty of the Court, with the duty of the officers or board made respondents to such a proceeding. If the act is unconstitutional, it is not a defense or justification to a public officer in the performance or non-performance of the duties of his office. While perhaps he ought not to be required to determine, at his peril, the constitutionality of a statute, and should obey the terms of the same until its constitutionality has been determined by a court of competent jurisdiction, and he undoubtedly has the right to obey and is justified in obeying the requirements of, or he may refuse to do an act in violation of, a statue not yet adjudicated unconstitutional, rather than determine the question himself, yet that is the question presented to the court by a mandamus proceeding to compel the doing or refraining from doing, by an officer or board, of some act violating a statute alleged to be unconstitutional. This is not requiring the board to pass upon the constitutionality of the statute, but is placing the burden, where it rightfully belongs, upon a court of competent jurisdiction."

We do not think that it is necessary to unduly lengthen

this opinion by citing language from the numerous adjudicated cases. The decided weight of judicial authority supports the relator's contention, and we believe that it should be adopted and followed in this State.

For the reasons above stated we are of the opinion that this court has jurisdiction to hear and dispose of the petition for a writ of mandamus on its merits.

RODNEY, Judge.

I cannot bring myself to believe that this Court has the jurisdiction, under Article 4 of the Constitution, to issue the writ of mandamus. I have no intention to elaborate these views or to file any extended opinion, but briefly to give my conclusion. To me it is clear that the power of the Supreme Court to issue mandamus under Article 4 of the Constitution is confined to those cases where the named Court or Judge has failed or refused to act in some judicial or quasi judicial capacity. The only question is whether the Court, acting as a Board of Canvass under Article 5 of the Constitution, is constituted a Superior Court in the sense that the term Superior Court is used in Article 4.

By Article 4 of the Constitution the Superior Court is composed of the Chief Justice and the four Associate Law Judges. By Article 5 it is provided that votes shall be canvassed by the Superior Court consisting, in Kent County, of the Chancellor of the State and the Resident Associate Judge. We, therefore, have mention of two separate and distinct Superior Courts of entirely different composition or personnel. An inspection of the Constitutional Debates clearly indicates to me that the Superior Court, sitting as a Board of Canvass under Article 5 of the Constitution, is a special constitutional tribunal, and not the Superior Court as part of the general judiciary system of the State.

The rights sought to be adjudicated in the present pro-

ceedings could be litigated in a contested election case. Such proceeding would be held before the Superior Court, as part of the general judiciary system, and appellate proceedings brought therefrom to this Court. We might then find this Court confronted with substantially the same problem, reviewing the acts of two separate and distinct Courts from the same county, and with entirely different Judges constituting such Superior Court, and neither proceeding would be res adjudicata as to the other.

To me it seems that when acting as a Board of Canvass, the Court, while expressly called the Superior Court, is not the Superior Court mentioned in or contemplated by Article 4 of the Constitution, but a special constitutional tribunal created for one purpose alone.