THE STATE OF DELAWARE, upon the relation of John G. Tarburton, Petitioner, v. COLLINS J. SEITZ, Chancellor of the State of Delaware, and WILLIAM J. STOREY, Associate Judge of the Superior Court of the State of Delaware, Resident in Kent County, constituting the Superior Court of the State of Delaware in and for Kent County and sitting as the Board of Canvass, in and for Kent County, State of Delaware, Respondents, and FRED B. CAREY, SR., Intervening Respondent.

(*March* 8, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Samuel R. Russell* (of Morford, Young and Conaway) for the Petitioner.

*Harold Schmittinger* for intervenor.

Supreme Court of the State of Delaware, No. 54, 1960.

SOUTHERLAND, C. J.:

At the general election of November 8, 1960, petitioner Tarburton was the candidate of the Democratic Party for the Office of Levy Court Commissioner from the First Levy Court District of Kent County. Intervener Carey was the Republican candidate for the same office. On November 10 the Board of Canvass convened for the purpose of ascertaining the state of the election. The election certificate showed that Carey had received a majority of five votes.

Tarburton filed with the Board of Canvass a petition challenging the legality of certain absentee ballots cast in certain of the election districts. One of the grounds was that in three of the districts the envelopes containing certain of the absentee ballots had not been signed by the clerks as required by law. The Board granted the recount in respect of these districts. The recount reduced Carey's majority to three votes. The Board denied the petition in so far as it was based on other grounds.

Tarburton seeks a writ of mandamus directing the Board of Canvass to reconvene and recount the absentee ballots in six other election districts. He asserts that 45 ballots out of the total 525 cast in these six districts were illegal on the following grounds:

(1) That certain absentee voters were not registered voters;

(2) That certain absentee ballots were illegal because the voters' applications for such ballots affirmatively showed that the voters did not fall in any of the classes of persons eligible to vote by absentee ballot;

(3) That certain other absentee voters had not executed the affidavits required to support the applications for absentee ballots;

(4) That the affidavits in support of certain other applications for absentee ballots were improperly executed or failed to specify the facts required by law.

Intervener has moved to dismiss the petition. He advances several contentions in support of the motion. The only one which need be considered is the contention that the Board of Canvass was without jurisdiction to grant the relief requested.

The statute regulating absentee voting is found in Chapter 55 of Title 15, *Delaware Code*. The following brief summary of its provisions refers to sections of that title.

A qualified elector who may be absent from the county on the day of the general election may vote by absentee ballot if such absence is (1) because of service in the Armed Forces of the United States or in the public service of this State; (2) because of business or occupation; or (3) because of sickness or disability. § 5501, § 5503.

Any elector desiring to vote by absentee ballot because of the second or third reason must file an appropriate affidavit with the Department of Elections. An absentee voting application on the ground of physical disability must be supported by a physician's affidavit; an application on the ground of business reasons must be supported by the employer's affidavit, or by the applicant's affidavit if he is self-employed. § 5504.

Upon request, supported by affidavit if the case requires it, the Department mails to the voter an official ballot together with a "voucher envelope". On the voucher envelope is printed a second affidavit to be signed by the voter certifying, among other things, that he is a resident of the State and that he cannot appear at the polling place for one of the three reasons specified in the law. § 5510. The voter returns this envelope and the ballot to the Department of Elections.

§ 5511. On election day the Department delivers the envelope and ballot to the Inspector of Elections at the polling place, enclosed in a "carrier envelope". § 5515.

At any time while the polls are open the carrier envelope is opened, the voter's name is announced for the purpose of challenges, and his registration and signature are verified. The official envelope containing the ballot is then endorsed by the clerks and the vote is cast. § 5516.

The vote of an absentee voter may be challenged for any cause provided in the general election laws, and also on the ground that the affidavit required by § 5504 is false, or on the ground that a voter allegedly absent because of business was in fact not absent from the district for the entire day of the general election. § 5517.

Reference is made to the statement of petitioner's grounds for challenging the absentee ballots, set forth at the outset of this opinion. It is clear that if the Board of Canvass had considered and passed on these grounds, it would have been required to compel the production before it, by subpoena or otherwise, of the § 5504 affidavits filed with the Department of Elections and retained by it, as well as the registration books. It would then have had to hold a hearing upon the matter. And this is exactly what petitioner says it should have done.

We disagree. We think that the case is ruled by *State ex rel. Mitchell v. Wolcott*, 7 *Terry* (46 *Del.*) 368, 83 *A.* 2d 762. That case involved the erroneous action of the election officers in holding open the polls beyond the time fixed by law. Recognizing the illegality of the procedure, we held that the duties of the Board of Canvass under Section 6 of Article V of the Constitution, *Del. C. Ann.* were largely ministerial in nature and did not include the power to try an issue of misconduct of the election officers.

Section 6 provides in part:

"In case the certificates of election of any hundred or election district shall not be produced, or in case the certificates produced do not agree, or in case of complaint under oath of fraud or mistake in any such certificate, or in case fraud or mistake is apparent on the face of any such certificate, the court shall have power to issue summary process against the election officers or any other persons to bring them forthwith into court with the election papers in their possession or control, and to open the ballot boxes and take therefrom any papers contained therein, and to make a recount of the ballots contained therein, and to correct any fraud or mistake in any certificate or paper relating to such election."

In the *Mitchell* case the contention was that the power to correct fraud or mistake "in any certificate or paper" included the power to correct the error of the election officials. We rejected the argument.

In the instant case the argument is that the power to compel the production of "the election papers" includes the power to compel the production of the § 5504 affidavits and of the registration books, and the power to subpoena "any other persons" includes the power to subpoena officials of the Department of Elections.

This is an unwarranted stretch of the language of the section. The context indicates that the phrase "election papers" refers to the certificates of election, and "any other persons" means persons in whose custody they may be found. This construction is borne out by the Debates of the Constitutional Convention of 1897. The inclusion of the language relied on was occasioned by the election law then recently adopted, which required three certificates of election instead

of two, the third to be retained by the minority judge of election and delivered by him to the Board of Convass. See Volume 5 of the Debates, pp. 3210-3213. As to the intent of the framers that the duties of the Board were to be largely ministerial, see also Volume 3, pp. 1813-1816.

We reiterate what we said in the *Mitchell* case:

"* * * to permit the trial before the Board of Canvass of cases of the kind here presented, involving protracted hearings, would seriously interfere with the orderly progress of the canvass and unjustifiably delay the count." 7 *Terry* (46 *Del.*) 377, 83 *A.* 2d 767.

If it be said that in this case no protracted hearing would be required, the answer is that if petitioner's contention were accepted, the Board would have to try the issue of the falsity of the § 5504 affidavit if the vote were challenged on that ground.

Petitioner has mistaken his remedy. He is seeking to give the Board of Canvass power to try a contested election proceeding. Such a remedy is available under 15 *Del. C.* §§ 5941-5955, but not before the Board of Canvass.

Petitioner makes an argument based on hardship. He says that a challenge at the polls is a prerequisite to the institution of a contested election proceeding and that it is not feasible to exercise the right to challenge an absentee voter in such a case as this because the § 5504 affidavits are not required to be sent to the polls, and the challenger has no opportunity to examine them. It is not clear to us why these affidavits could not be examined, prior to the election, in the office of the Department of Elections, in order to obtain grounds of challenge. Moreover, the affidavit on the voucher envelope serves at the least to put a challenger on notice of the reason alleged by the voter for absentee voting. But these considerations apart, the omission of the statute in this respect (if it be an omission) is attributable to the action of

the legislature. It cannot be remedied by stretching the jurisdiction of the Board of Canvass.

We are clearly of opinion that the Board of Canvass is without jurisdiction to consider the matters urged in the petition before us.

Intervener advances certain other contentions in support of his motion to dismiss, but it is unnecessary to consider them.

The petition is dismissed.