IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LA MAR GUNN, | § | No. 717, 2014 |
| | § | |
| Petitioner-Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Kent County |
| | § | |
| BETTY LOU MCKENNA, | § | |
| | § | |
| Respondent-Below, | § | |
| Appellee. | § | |

Submitted: April 15, 2015
Decided: May 14, 2015

Before **STRINE**, Chief Justice, **HOLLAND, VALIHURA**, Justices, **NOBLE**[1], Vice-Chancellor, and **WALLS**[1], Judge.

Upon Appeal from the Superior Court. **REMANDED TO VACATE**.

Julianne E. Murray, Esquire, (*argued*), Ronald D. Phillips, Jr., Esquire, MurrayPhillips, P.A., Georgetown, Delaware, Attorneys for Petitioner-Below, Appellant.

John W. Paradee, Esquire (*argued*), Stephen E. Smith, Esquire, Baird Mandalas & Brockstedt, LLC, Dover, Delaware, Attorneys for Respondent-Below, Appellee.

**HOLLAND**, Justice:

---

[1] Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

This is an appeal by the Petitioner-Below/Appellant, La Mar Gunn ("Gunn"), from the December 30, 2014, judgment of the Superior Court declaring a tie in the November 4, 2014, general election for the Office of the Recorder of Deeds for Kent County (the "Election"). This action is an election contest under Chapter 59 of Title 15 which commenced on November 13, 2014, when Gunn filed a Verified Petition Contesting Election ("Petition") in the Superior Court. The Respondent-Below/Appellee Betty Lou McKenna ("McKenna") filed a Motion to Dismiss, asserting that the Petition failed to allege any facts which would provide the Superior Court with jurisdiction to address the claims asserted by the Petition. In particular, McKenna contended that the Petition failed to satisfy any of the statutory jurisdictional grounds for an election contest set forth in 15 *Del. C.* § 5941.

In response to McKenna's Motion to Dismiss, Gunn argued that the Petition stated a claim under 15 *Del. C.* § 5941(1), on the theory that the recount conducted by two Superior Court judges, sitting as the Board of Canvass in Kent County, on November 6, 2014, evidenced "malconduct on the part of *election officers* or clerks holding the election" within the meaning of 15 *Del. C.* § 5941(1), because three different counts conducted by the Superior Court, sitting as the Board of Canvass, resulted in three different outcomes. McKenna argued that the two judges of the Superior Court, sitting as the Board of Canvass, are *not* "*election officers* or clerks

2

holding the election" within the meaning of 15 *Del. C.* § 5941(1), and therefore, the claims asserted by Gunn's Petition did not fall within the subject-matter jurisdiction of 15 *Del. C.* § 5941. A single judge of the Superior Court denied McKenna's Motion to Dismiss, finding that the conduct of the Board of Canvass in Kent County was sufficiently "abnormal," "inadequate," "incorrect or deficient"[2] to constitute "malconduct" within the meaning of 15 *Del. C.* § 5941(1).

In this appeal, McKenna contends that the single judge of the Superior Court "missed the key point" in her Motion to Dismiss, to-wit: the two judges of the Superior Court sitting, as the Board of Canvass, are *not "election officers* or clerks holding the election." Accordingly, McKenna asserts that the claims asserted by Gunn's Petition do not fit within the jurisdictional requirements of 15 *Del. C.* § 5941(1). Consequently, McKenna argues that the single judge of the Superior Court was without subject matter jurisdiction to entertain Gunn's Petition and should have granted her Motion to Dismiss.

Gunn argues that McKenna's jurisdictional argument is procedurally barred because McKenna did not file a cross-appeal. However, for more than two centuries, the United States Supreme Court has recognized that "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the

---

[2] *Gunn v. McKenna*, 2014 WL 7466521, at *3 (Del. Super. Dec. 23, 2014) (internal citation omitted).

3

same civil litigation, even initially at the highest appellate instance."[3]  This Court has also held "lack of jurisdiction may be raised at any time on motion of the court [*sua sponte*], even though the parties, by failure to raise the question, may have waived the right."[4]  Accordingly, whenever it appears by suggestion of the parties or by being raised *sua sponte* that the court lacks jurisdiction, the court must dismiss the action.[5]

We have concluded that Gunn's Petition fails to allege any "malconduct on the part of *election officers* or clerks holding the election," within the meaning of 15 *Del. C.* § 5941(1).  Accordingly, the Petition fails to satisfy the jurisdictional prerequisites for filing an election contest in the Superior Court under 15 *Del. C.* § 5941.  Therefore, McKenna's Motion to Dismiss should have been granted and the Petition should have been dismissed.  Consequently, this matter is remanded to the Superior Court with instructions to vacate its order and judgment dated December 30, 2014.[6]

### *Facts*

This appeal relates to the November 4, 2014, general election for the Office of the Recorder of Deeds for Kent County.  On November 4, 2014, the Department

---

[3] *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also Capron v. Van Noorden*, 6 U.S. 126 (1804).

[4] *Chavin v. H.H. Rosen & Co.*, 246 A.2d 921, 922 (Del. 1968).

[5] *See Des Moines Nav. & R. Co. v. Iowa Homestead Co.*, 123 U.S. 552, 557 (1887).

[6] *See State v. Insley*, 141 A.2d 619 (Del. 1958) (statute is inapplicable and affords no basis for the exercise of jurisdiction).

of Elections declared that Gunn won the Election by two votes, 19,247 to 19,245. Gunn received 18,558 machine votes and 689 absentee votes. McKenna received 18,455 machine votes and 800 absentee votes.

On November 6, 2014, two judges of the Superior Court, sitting as the Board of Canvass in Kent County, convened to certify the Election results, as required by Section 6, Article V of the Delaware Constitution. Because of the closeness of the vote differential, the Board of Canvass was required to recount absentee ballots pursuant to 15 *Del. C.* § 5702(e).[7] The Board of Canvass conducted three recounts of the absentee ballots. After the first recount, Gunn's lead increased from two to three votes. After the second recount, Gunn's lead increased from three to seven votes. After the third recount, McKenna was ahead by two votes. The two Superior Court judges, sitting as the Board of Canvass in Kent County, certified the third recount.

On November 13, 2014, Gunn filed a verified Petition in the Superior Court contesting the Election results and alleging malconduct pursuant to *Del. C.* § 5941(1). According to Gunn, certifying the third recount, when each recount yielded a different vote differential, was malconduct by the two judges of the Superior Court, sitting as the Board of Canvass in Kent County. McKenna filed a

---

[7] 15 *Del. C.* § 5702(e) requires the Board of Canvass to perform a hand recount of absentee votes when the vote differential is the lesser of 1,000 votes or .5 percent.

5

Motion to Dismiss for lack of standing. A different single judge of the Superior Court denied McKenna's Motion to Dismiss.

In its December 23, 2014, decision and order, a single judge of the Superior Court held that it was malconduct by two other judges of the Superior Court, sitting as the Board of Canvass in Kent County, to certify the third recount. The single judge of the Superior Court ordered the Department of Elections to conduct a hand recount of the absentee ballots cast in the Election. On December 29, 2014, the Department of Elections recounted the absentee ballots. At the conclusion of that recount, when the total absentee votes were combined with the machine votes, the result was a tie.

On December 30, 2014, pursuant to 15 *Del. C.* § 5954(c), the Office of the Recorder of Deeds in and for Kent County was declared vacant by the single judge of the Superior Court.

### *Superior Court Jurisdiction*

We began our analysis by examining the jurisdiction that is vested in the Superior Court by the Delaware Constitution in Articles IV and V. Article IV of the Constitution is entitled "Judiciary," and Section 7 of it provides as follows:

> Section 7. The *Superior Court* shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the formerly existing Superior Court; and also shall have all the jurisdiction and powers vested by the laws of this State in the

6

formerly existing Court of General Sessions of the Peace and Jail Delivery; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of General Sessions; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of Oyer and Terminer.[8]

Article V of the Constitution is entitled "Elections." Section 6 provides for the Superior Court to canvass the votes of the general election in the respective counties, as follows:

> Section 6. Said presiding *election officer* of each election district, following the close of the polls on the day of the general election, shall deliver the coy of each voting machine recording tape containing the signatures of the election officers present at the opening and closing of the polls from each voting machine assigned to his or her district and one copy of the voting machine certificate, made and certified by law, together with the ballot box or ballot boxes containing absentee ballots and other papers required by law to be placed therein, to the Prothonotary of the *Superior Court* of the county, who at 10 o'clock on the second day after the election present the same to the said Court, and the *said Court* shall at the same time *convene for the performance of the duties hereby imposed upon it*; and thereupon the said Court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly ascertain the state of the election throughout the county, by determining the aggregate number of votes for each office given in the election districts of the county and for every person who received votes for each office. . . .

---

[8] DEL. CONST. art. IV, § 7 (emphasis added).

7

For the purposes of this section the *Superior Court* shall consist in New Castle County of the President Judge and resident Judge; in Kent County of the resident Judge and a Judge designated by the President Judge; and in Sussex County of the resident Judge and a Judge designated by the President Judge.[9]

At the present time, Article V of the Delaware Constitution provides for two Superior Court judges to sit as the Board of Canvass in each county. However, Article V once provided for the Chancellor to sit with a judge of the Superior Court to constitute the Board of Canvass in Kent County. In *State ex rel. Walker v. Harrington*,[10] this Court held that, although the jurisdiction of the Superior Court was established in Article IV and V of the Delaware Constitution, and Article V designated the Chancellor to be a member of the Superior Court, sitting as the Board of Canvass in Kent County, there was only *one* Superior Court. This Court explained:

> We think that "the" Superior Court sitting as a Board of Canvass is "the" Superior Court established by said Article IV. Manifestly, under our Constitution, there is but one Superior Court. Its jurisdiction, which is co-extensive with the State, is conferred by Sections 5 and 11 of Article IV of the Constitution, its duties, with respect to elections, are defined in Section 6 of Article V of the Constitution, and it is the Superior Court referred to in paragraph (5), Section 12 of Article IV of the Constitution. The fact that said Section of Article V provides that for the purposes of the section the Chancellor shall be a member of the Court in Kent

---

[9] DEL. CONST. art. V, § 6 (emphasis added).
[10] 27 A.2d 67 (Del. 1942).

8

County does not evidence the creation of more than one Superior Court.[11]

Since *Walker* was decided, Article V of the Delaware Constitution has been amended to remove the Chancellor as a member of the Superior Court, sitting as the Board of Canvass in Kent County. The Delaware Constitution now provides that two judges of the Superior Court will sit as the Board of Canvass in each county. This compels the conclusion that *there is still only one Superior Court* and its jurisdiction continues to be defined separately in the Judicial Article IV and the Election Article V of the Delaware Constitution. Those differences are dispositive in this appeal.

### *Board of Canvass*

In *State ex rel. Mitchell v. Wolcott*, this Court was asked to decide whether the *Superior Court*, sitting as a Board of Canvass to "ascertain the state of the election, could take cognizance of a charge that the *election officers* unlawfully held open the polls for a period of time beyond the legal closing hour of the election, and received and counted ballots tendered during that period."[12] In answering, that question we noted that "[p]rior to the adoption of the Delaware Constitution of 1897, the election laws provided for county boards of canvass consisting of the inspectors of the hundreds in each county and the sheriff of the

---

[11] *Id.* at 74.
[12] 83 A.2d 762, 764 (Del. 1951).

9

county."[13]  "Their duty was to 'ascertain the state of the election throughout the county, by calculating the aggregate amount of all the votes for each office that shall have been given, in all the hundreds of the county, for every person voted for for such office.'"[14]  Prior to 1897, the Court of Errors and Appeals held the powers of the county boards of canvass was, "in general, ministerial, and not discretionary or judicial, in their character. . . ."[15]

The question presented in *Mitchell* was: to what extent were the powers and duties of the county boards of canvass enlarged when those responsibilities were conferred upon the Superior Court by the Delaware Constitution of 1897?  In *Mitchell*, this Court held:

> [T]he Superior Court is, under the [1897] Constitution, still primarily a board of canvass whose function is to count the vote.  Granting that it is 'the Superior Court' for the purpose of review of its action by writ of mandamus from this Court, *State ex rel. Walker v. Harrington*, 3 Terry 14, 42 Del. 14, 27 A.2d 67, it yet remains true that it is a body specially created and constituted for a limited purpose, to perform specified duties, largely ministerial in nature.  The framers of the [1897] Constitution, in transferring to the Superior Court the powers and duties of the former boards of canvass, added certain specified powers and none others.  Had it been the intent to confer upon the new Boards general power over the conduct of elections as affecting the

---

[13] *Id.* at 765 (citing Code 1893, Ch. 18, Sec. 24).
[14] *Id.* (citation omitted).
[15] *McCoy v. State ex rel. Allee*, 36 A. 81, 82, 83 (Del. 1897) (citation omitted).

10

returns, language to that effect would certainly have been included.[16]

More importantly, for purposes of this case, in *Mitchell*, we held that "[a] defeated candidate claiming, among other things, malconduct of the *election officers* or the reception of illegal votes is afforded *a remedy in the Superior Court as such*,"[17] *i.e.*, sitting with its Article IV judicial jurisdiction rather than its Article V Board of Canvass jurisdiction. In particular, in *Mitchell*, we recognized that if the relators' contention was accepted, the issue of *election officers'* misconduct is first tried before two judges of the Superior Court, sitting as the Board of Canvass, and the losing candidate could then re-try it before a single judge of the Superior Court.[18] We concluded that "[s]uch an anomalous result is to be shunned."[19]

Accordingly, we held "that the duties of the [Superior Court sitting as] the Board of Canvass under Section 6 of Article V of the [Delaware] Constitution were largely ministerial in nature and did not include the [Article IV judicial] power to try an issue of misconduct of the election officers."[20] Therefore, we held such a remedy is available under 15 *Del. C.* §§ 5941-55 before a single Superior Court

---

[16] *Mitchell*, 83 A.2d at 766.
[17] *Id.* at 767 (emphasis added).
[18] *Id.*
[19] *Id.*
[20] *State ex rel. Traburton v. Seitz*, 168 A.2d 110, 112 (Del. 1961) (internal citations omitted).

11

judge exercising its Article IV judicial jurisdiction but not before two judges of the Superior Court sitting as the Article V Board of Canvass.[21]

### *Election Contest Jurisdiction*

The jurisdiction to hear election contests is vested in the Superior Court by statute. The Superior Court discharges that judicial responsibility under Article IV of the Delaware Constitution. The jurisdictional issue presented in this appeal is whether two Superior Court judges sitting as the Board of Canvass are *election officers* for purposes of 15 *Del. C.* § 5941(1).

15 *Del. C.* § 5941 provides that:

> Any person claiming to be elected to an office to be exercised in and for any county, district or hundred may contest the right of any person declared to be duly elected to such office for any of the following causes:
>
> (1) For malconduct on the part of the *election officers* or clerks holding the election, or any one of them;
>
> (2) When the person whose right to the office is contested was not at the time of the election eligible to such office;
>
> (3) When the person whose right is contested has given to any elector or inspector, judge or clerk of election, any bribe or reward or shall have offered any bribe or reward for the purpose of procuring his or her election;
>
> (4) On account of illegal votes.[22]

---

[21] *Id.*
[22] 15 *Del. C.* § 5941 (emphasis added).

12

In Chapter 47 (entitled "Election Officers"), 15 *Del. C.* § 4701(b)(1) authorizes the Department of Elections to appoint one "inspector," two "judges," and two "clerks" as the *"election officers"* for each election district.[23] 15 *Del. C.* § 4702 authorizes the Department of Elections to appoint "such additional *election officers* to serve as machine operators, greeters or for other purposes deemed necessary *to facilitate the operation of the polling places.*"[24] These *"election officers"* are trained and paid by the Department of Elections.[25]

Chapter 49 of Title 15 (entitled "Conduct of Election") contains several provisions which make it clear that the *"election officers* or clerks holding the election"* are the officials engaged by the Department of Elections to oversee the casting of ballots on Election Day. For example, 15 *Del. C.* § 4902 provides that:

> If on the day of holding an election any *election officer* authorized by law to serve at the election in any election district shall be absent from the place of election at 7:00 in the forenoon, the inspector, if present, or, in the absence of the inspector, then any judge who may be present, shall immediately notify the department of elections for that inspector's or judge's county of such absence.[26]

---

[23] 15 *Del. C.* § 4701(b)(1).
[24] 15 *Del. C.* § 4702 (emphasis added).
[25] *See* 15 *Del. C.* § 4741 and 15 *Del. C.* § 4707, respectively.
[26] 15 *Del. C.* § 4702.

13

15 *Del. C.* §§ 4904 and 4909 require "election officers" to subscribe to an oath of office, swearing not to engage in any of the type of conduct which may give rise to various criminal offenses defined by Chapter 51 of Title 15.[27]

Conversely, 15 *Del. C.* § 5701 specifically incorporates Article V of the Delaware Constitution and recognizes that *the Board of Canvass is comprised of certain judges of the Superior Court*, "with the aid of such of *its* officers and such sworn assistants as it shall appoint . . . ."[28] 15 *Del. C.* § 5702 authorizes the two judges of the Superior Court sitting as the Board of Canvass to "issue summary process against the *election officers* of such election district" if the records of an election are not produced in a timely fashion prior to convening the Board of Canvass.[29] 15 *Del. C.* § 5714 provides that all necessary costs and expenses incurred in carrying out the duties of the Board of Canvass – including the compensation of all personnel involved – "shall be paid by the State Treasurer from any moneys in the State Treasury not otherwise appropriated."[30]

---

[27] *See* 15 *Del. C.* §§ 4904 & 4909.

[28] 15 *Del. C.* § 5701(a) ("The *Superior Court shall convene* in each county on the 2nd day after the general election at 10 a.m., for the performance of the *duties imposed upon it by § 6 of article V of the Constitution of this State and by this chapter*. Thereupon the Court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly ascertain the state of the election throughout the county and in the respective election districts by calculating the aggregate amount of all the votes for each office that shall have been given in all of the election districts of the county for every person voted for such office." (emphasis added)).

[29] 15 *Del. C.* § 5702 (emphasis added).

[30] 15 *Del. C.* § 5714.

14

We hold that the Delaware Constitution and applicable provisions of Title 15 demonstrate that the *"election officers* or clerks holding the election" are the officials engaged by the Department of Elections to oversee the casting of ballots on Election Day and *not* the two judges of the *one Superior Court*, sitting as the Board of Canvass, who certify and proclaim the results two days later.[31]

### *Supreme Court Jurisdiction*

Gunn argues that unless the conduct of two judges of the Superior Court, sitting as the Board of Canvass, can be examined in a statutory election contest, those actions can never be reviewed. Gunn's argument reflects a misunderstanding of this Court's jurisdiction and its prior precedents. This Court's original and appellate jurisdiction under the Delaware Constitution is found in Article IV. The following two subsections are relevant.

> Section 11. The Supreme Court shall have jurisdiction as follows:
>
> (1)(a) [Appellate jurisdiction] To receive appeals from the Superior Court in civil causes and to determine finally all matters of appeal in the interlocutory or final judgments and other proceedings of said Superior Court in civil causes.
>
> (5) [Original jurisdiction] To issue writs of prohibition, quo warranto, certiorari and mandamus to the Superior Court, and the Court of Chancery, or any of the Judges of the said courts and also to any inferior

---

[31] *See Mitchell*, 83 A.2d at 767.

15

court or courts established or to be established by law and to any of the Judges thereof and to issue all orders, rules and processes proper to give effect to the same.[32]

In *Thompson v. Thompson,* we held that, "[i]t seems to be well established that in the absence of special constitutional or statutory provisions, the remedy of an appeal under Section 11(1)(a) is confined to the review of judgments rendered by the Superior Court when the proceedings follow the course of the common law."[33] In *Walker*, we held that the examination of election returns by the Superior Court, sitting as the Board of Canvass, under Article V does not follow the "course of the common law."[34] Accordingly, we held that "the acts of the Superior Court, sitting as the Board of Canvass, are not subject to review by the Supreme Court *on appeal* . . . ."[35] Nevertheless, it is within the original jurisdiction of the Supreme Court, in all proper cases to direct "its writ of mandamus to the Superior Court as a Court, or as a Board of Canvass, or to any of the Judges of the Court, in his official capacity."[36] In fact, in *Mitchell*, this Court specifically reaffirmed our original jurisdiction to issue writs of mandamus to the Superior Court, sitting as the Board of Canvass.[37]

---

[32] DEL. CONST. art. IV, § 11.
[33] 140 A. 697, 698 (Del. 1928); *accord Walker*, 27 A.2d at 75.
[34] *Walker*, 27 A.2d at 70-75.
[35] *Id.* (emphasis added).
[36] *Id.* at 74.
[37] *Mitchell*, 83 A.2d at 766-68.

16

## No Jurisdiction

In this case, a single judge of the Superior Court had no subject matter jurisdiction to review the actions by two judges of the Superior Court, sitting as the Board of Canvass in Kent County, because they are not *election officers*, which is a condition precedent to the Superior Court's Article IV judicial subject-matter jurisdiction established by 15 *Del. C.* § 5941. The proper procedure to review actions by the Superior Court, sitting as the Board of Canvass, pursuant to Article V has always exclusively been by filing a writ petition under this Court's original jurisdiction. The election contest statute does not apply to actions by two judges of the Superior Court, sitting as the Board of Canvass, and provided no basis for the subject-matter jurisdiction of a single judge of the Superior Court to act in this purported election contest proceeding. Therefore, this Court has no appellate jurisdiction to review that action. Neither the Superior Court or this Court's subject-matter jurisdiction can "be expanded to account for the parties litigation conduct . . . ."[38]

## Conclusion

This matter is remanded to the Superior Court with directions to vacate its December 30, 2014 judgment.[39] Given the absence of a proper and timely

---

[38] *Kontrick*, 540 U.S. at 444-45.
[39] *See Insley*, 141 A.2d at 623 (statute is inapplicable and affords no basis for the exercise of jurisdiction).

17

challenge, the Election result certified by the Superior Court, sitting as the Board of Canvass in Kent County, is final.